LOUNSBURY *against* THE PROTECTION INSURANCE COMPANY.

Where it was provided in a policy of insurance against loss or damage by fire, that the insurers would not be liable for loss or damage, happening by means of any invasion, insurrection, riot, or civil commotion, or of any military or usurped power; also, that if the building insured should be used, during the term of insurance, for any occupation, or for the purpose of storing therein any goods, denominated hazardous or extra-hazardous in the conditions annexed to the policy, (unless otherwise specially provided for) the policy should cease and have no effect; in an action on the policy, it was held, that these exceptions were not conditions precedent, but matters of defence to be taken advantage of by pleading; and therefore, it was not necessary to negate in the declaration the existence of such excepted predicaments.

So where it was provided in the conditions annexed to such policy, that in case of a loss by fire, the insured should procure a certificate from a magistrate, not concerned in the loss or related to the insured; it was held not to be necessary to negate in the declaration such disqualifications of the magistrate.

Where one of the conditions annexed to the policy, required the insured to declare on oath, whether any and what other insurance had been made on the property insured; the declaration averred, that no other insurance had been made on such property; and the declaration on oath given in evidence was, " that said property, or any part thereof, was not, nor has been insured, since the policy was taken out;" it was held, that such declaration on oath satisfied the condition of the policy, and was equivalent in its import to the averment in the declaration.

Where the subject of insurance was a building, occupied, by the insured, as a manufactory of hat bodies and *the privilege for all the process of said business;* the conditions annexed to the policy specified, among occupations denominated extra-hazardous, " carpenters in their own shops or in buildings erecting or repairing;" and it appeared, that the insured, during the existence of the risk, had used a room in such building as a shop for the purpose of repairing the machinery in such manufactory necessary for the business of making hat bodies; it was held, that such use of the building was protected, by the policy.

Where it was provided in the policy, that if the building insured should be used, during the existence of the risk, for any occupation, or for the purpose of storing therein, any goods, denominated hazardous or extra-hazardous in the conditions annexed to the policy, (unless otherwise specially provided for) then and from thence forth, *so long as* the building should be so used, the policy should cease and be of no force; and it appeared, that the insured, during the existence of the risk, used such building for an occupation denominated extra-hazardous, but that, before the fire, he had ceased to use it in that manner; it was held, that the insured was not thereby precluded from a recovery under the policy.

*Fairfield,*
June, 1831.

Lounsbury
*v.*
Protection
Insurance co.

So where boards, plank and other timber, not denominated hazardous, were, during the existence of the risk, put into the building insured, and remained in it, at the time of the fire; it was held, that the insured was not thereby precluded from a recovery.

THIS was an action on a policy of insurance against loss or damage by fire, to the amount of 2000 dollars, for one year from the 3rd of *September*, 1827, on a wooden building in *Norwalk*, owned and occupied by the plaintiff, as a manufactory of hat bodies, and on the privilege for all the process of said business, on machinery contained in said manufactory, and on the plaintiff's dwelling-house.

The declaration described the defendants as a body politic, incorporated by the legislature of this state, setting forth the general powers of the company under their charter; and then proceeded to allege the execution of the policy, by the defendants, reciting its provisions and the articles annexed as " conditions of insurance." The following clauses in the policy are the only ones, on which any question arose in this case. " *Provided always and it is hereby declared*, that this company shall not be liable to make good any loss or damage by fire, which may happen or take place, by means of any invasion, insurrection, riot or civil commotion, or of any military or usurped power. *And provided further*, that in case the assured shall have already any other insurance against loss by fire on the property hereby insured, not notified to this company, and mentioned in or indorsed upon the policy, then this insurance shall be void and of no effect." " *And it is agreed and declared*, to be the true intent and meaning of the parties hereto, that in case the property insured shall, at any time after the making and during the continuance of this insurance, be appropriated, applied or used to or for the purpose of carrying on or exercising therein any trade, business or vocation, denominated hazardous or extra-hazardous in the conditions annexed to this policy, or for the purpose of storing therein any of the articles, goods or merchandize in the conditions aforesaid denominated hazardous or extra-hazardous, unless herein otherwise specially provided for, or hereafter agreed, by this company, in writing, and added to or indorsed upon this policy, then, and from thenceforth, so long as the same shall be so appropriated, applied or used, these presents shall cease and be of no force or effect." The three first articles of the conditions of insurance designa-

ted the goods, trades and occupations denominated not hazardous, hazardous and extra-hazardous. Among the extra-hazardous were " carpenters in their own shops or in buildings repairing." Another article, numbered as the 10th, was as follows : " All persons insured by this company, and sustaining loss or damage by fire, are forthwith to give notice thereof to the company ; and as soon after as possible, to deliver in a particular account of such loss or damage, signed with their own hands, and verified by their oath or affirmation ; and also, if required, by their books of account and other proper vouchers. They shall also declare on oath, whether any and what other insurance has been made on the same property, and procure a certificate, under the hand of a magistrate, notary public, or clergyman, (most contiguous to the place of the fire, and not concerned in the loss, or related to the insured or sufferers) that they are acquainted with the character and circumstances of the person or persons insured ; and do know or verily believe, that he, she, or they, really and by misfortune, and without fraud or evil practice, hath or have sustained, by such fire, loss and damage to the amount therein mentioned ; and until such proofs, declarations and certificates are produced, the loss shall not be deemed payable. Also, if there appear any fraud or false swearing, the insured shall forfeit all claim under his, her or their policy." The declaration then averred, that on the 29th of *July* 1828, said first described wooden building, occupied as manufactory, and the machinery therein, being the property of the plaintiff, were, accidentally and without the fault of the plaintiff, burned up and entirely consumed, by fire, and were thereby wholly lost to the plaintiff. After stating the value of the property so destroyed, the declaration proceeded thus : " The plaintiff, forthwith, *viz.* on the 30th of *July* 1828, gave notice to said company of such loss, and on the 11th of *July* 1828, and as soon as possible, delivered to said company a particular account of the loss by him sustained, by the destruction of said building, machinery and other property, signed with his hand, and verified by oath in due form, administered by *Benjamin Isaacs* Esq. justice of the peace in and for the county of *Fairfield ;* and on the same 11th of *July*, the plaintiff declared on oath, duly administered, by said justice *Isaacs*, that no other insurance had been made on the property destroyed as aforesaid, and procured a certificate, under the hand of said *Isaacs*, as such justice of the peace, he

*Fairfield,*
June, 1831.

Lounsbury
*v.*
Protection
Insurance co.

*Fairfield,* being the most contiguous to the place where said property
June, 1831. was destroyed, that he was acquainted with the character and
Lounsbury circumstances of the plaintiff, and that he verily believed, that
*v.* he really and by misfortune, and without fraud or evil practice,
Protection
Insurance co. had sustained, by such fire, the loss or damage to the amount
mentioned in his account thereof as aforesaid."

The cause was tried at *Danbury, September* term, 1830,
before *Daggett,* J.

The plaintiff having produced in evidence the policy of in-
surance, with the conditions thereto annexed, offered in evi-
dence his written declaration, made on oath before *Benjamin
Isaacs,* justice of the peace, which specified the articles of pro-
perty destroyed, with the value of each, amounting in the
whole to 3725 dollars, and then averred, that " said property,
or any part thereof, was not, nor has been insured, since the
policy of insurance was taken out from the *Protection Insur-
ance Company.*" To the admission of this document the de-
fendants objected, on the ground that it did not support the
plaintiff's declaration, and was not a compliance with the 10th
condition annexed to the policy. The judge overruled the
objection and admitted the evidence offered, and instructed the
jury, that it proved a full compliance with the condition in
question.

It was admitted, on the trial, that the fire, by which the
building and machinery were consumed, originated in a room
in the basement story. The defendants claimed and offered
evidence to prove, that the plaintiff, for many months before the
fire, occupied that room for the purpose of repairing the ma-
chinery used in the manufactory ; and that to do this, quanti-
ties of timber, boards and other materials, as well as benches
and the necessary tools, were kept in the room. And the de-
fendants prayed the court to instruct the jury, that if they
should so find the facts, the plaintiff could recover nothing.

The defendants moreover claimed, and introduced evidence
to prove, that the plaintiff, some time before the fire, commen-
ced the erection of a large dwelling-house near the manufac-
tory ; and that for many months previous to the fire and up to
the time of it, the plaintiff constantly used said room as a car-
penter's and joiner's shop ; and that large quantities of plank,
boards and other materials were constantly kept in it, and were
there wrought out in part for the use of such dwelling-house.
On the other hand, the plaintiff claimed and offered evidence

to prove, that no work had been done in said room, by joiners or carpenters, for about two weeks next previous to the fire; that the kitchen of the dwelling-house was so far finished, that it was used as a work-shop; and that there was no intention of returning to said room, for the purpose of using it as a work-shop in the further building of the dwelling-house. And the plaintiff claimed, that although he had, for a long time, used said room as a carpenter's and joiner's shop; although he had kept the tools and apparatus of a carpenter and joiner in said room; and although quantities of boards, plank and other timber were actually in it, at the time of the fire; yet if the jury should find, that he had ceased to do therein any of the work of a joiner or carpenter, for some time before the fire, without any intention of making further use of it, for that purpose, he was entitled to a recovery. The defendants resisted this claim.

*Fairfield,*
June, 1831

Lounsbury
*v.*
Protection
Insurance co.

The judge charged the jury, that the plaintiff had a right, under the policy, to use said room as a shop, for the purpose of having carpenter's and joiner's work done therein for the reparation of the machinery in said manufactory necessary for his business of making hat bodies, but not for the purpose of repairing the machinery of other manufactories; and that if the plaintiff, previous to the fire, had ceased to work in said room as a carpenter's shop, and did not intend to return and occupy it, or to do further work therein for the dwelling-house; the right of recovery under the policy thereupon revived, although lumber, boards and other materials were, by the plaintiff, left therein, and were actually therein, at the time of the fire; but if the jury should find, that the plaintiff used said room as a carpenter's shop, for the purpose of preparing materials for his dwelling-house, up to the time of the fire, then their verdict must be for the defendants.

The jury returned a verdict for the plaintiff; and the defendants moved for a new trial, on the ground that the evidence objected to, was improperly received, and for a misdirection. The defendants also moved in arrest of judgment, for the insufficiency of the declaration. Both motions were reserved for the advice of this Court.

*N. Smith* and *Hawley,* in support of the motions, contended, 1. That the evidence objected to, by the defendants, was inadmissible, because the declaration on oath did not conform to the 10th condition, as it does not deny other insurance *at the*

*Fairfield,*
*June, 1831.*

Lounsbury
*v.*
Protection
Insurance co.

date of the policy, but only that none has *since* been made. This is a condition *precedent ;* and there must be a *strict* compliance, to entitle the plaintiff to a recovery. *Worsley* v. *Wood & al.* 6 *Term Rep.* 710.

2. That the charge was incorrect in relation to the use of the building insured. The plaintiff had no right to use it as a carpenter's shop, for the purpose of repairing the machinery. In the first place, this use was not warranted, by the terms of the policy. Repairing machinery for the manufacture of hat bodies, is not a part of the process of making hat bodies, any more than the making of carpenter's tools is a part of a carpenter's trade. Secondly, the risk was increased, as much as though the carpenter's work were for any purpose not connected with the making of hat bodies ; and any increase of risk, independently of the language of the policy, vitiates it. *Stetson* v. *The Massachusetts Mutual Fire Insurance Company,* 4 *Mass. Rep.* 340.

3. That the charge was incorrect in another respect. In the first place, the policy having been once vacated, could not be revived, without some new act of the parties. But secondly, if it could, still the building should be rendered as secure against fire as it was before it was used as a carpenter's shop, by the removal of all combustibles. At any rate, it should have been submitted to the jury, whether the combustibles put into the building after the execution of the policy, and which remained in it, at the time of the fire, did not increase the risk. The charge assumes this broad principle ; that however much the risk may have been increased, by the boards, plank and other combustible materials put into the building, yet if those combustibles were not in the policy or conditions annexed to it, denominated hazardous, the insured was entitled to recover. Is this a sound principle ?

4. That the declaration is insufficient for not averring, that the building insured was not appropriated to hazardous business, or used for the purpose of storing therein hazardous goods ; and that the fire was not occasioned by any invasion, insurrection, &c. It is a *qualified* contract ; and the qualifications should be set forth, and the existence of those qualifications, in the present case, negated. 1 *Chitt. Plead.* 302. 308, 9. 1 *Saund. Pl. & Ev.* 145. *Worsley* v. *Wood* & al. 6 *Term Rep.* 710.

5. That the declaration is also insufficient for not averring, that the account was verified by the oath of the party ; and not

averring, that the justice who gave the certificate, was not concerned in the loss or related to the insured.

*Fairfield*,
June, 1831.

Lounsbury
*v.*
Protection
Insurance co.

*Sherman* and *Betts*, contra, contended, 1, That the declaration on oath was in compliance with the condition of the policy. The natural and just construction of the language is, that there was no other insurance at the date of the policy. This will be made apparent by a slight transposition of the words thus : " That said property was not insured, [when] the policy of insurance was taken out, nor has been since." This arrangement is in perfect accordance with the grammatical construction. At any rate, it shews the true *meaning* of the words used.

2. That the plaintiff had a right to repair his machinery in the building insured ; first, as necessarily incident to the business expressly covered by the policy, *viz.* the making of hat bodies. It is not according to the usage of the business—and the parties are supposed to contract with reference to that usage—to carry the machinery out of the building, to repair it. But secondly, the trades of carpenters are not prohibited, by the conditions of the policy, except " in their own shops, or in buildings erecting or repairing." A carpenter who comes into a hat manufactory, to repair the machinery, is not exercising his trade in his *own shop ;* nor is he employed in erecting or repairing *the building*.

3. That the charge was unexceptionable in regard to the validity of the policy after the prohibited occupation of the building ceased. The policy was never *vacated*. By the express stipulation of the parties, its operation was to be suspended only *so long as* the prohibited use of the property insured, continued.

4. That the declaration is sufficient, even on demurrer. All the exceptions rest on the assumption of an untenable position ; and the same answer is applicable to them all. Where the condition is precedent to *the cause of action*, performance of it must be averred ; but where it is subsequent to the cause of action, and precedent to *the right of recovery* only, its non-performance is matter of defence, and need not be averred. See *Com. Dig.* tit. Pleader. C. 81. *Hotham* v. *The East India Company*, 4 *Term Rep.* 638. 644. & seq. Here, the cause of action had accrued. This is sufficiently set forth. If any

*Fairfield,*
June, 1831.

Lounsbury
*v.*
Protection
Insurance co.

thing took place subsequently to defeat it, it was matter of defence. The common state of things is always presumed to exist, until the contrary is shewn—*e. g.* that a man is sane, not under duress, disinterested, &c.

5. That if the declaration were defective originally, the defect is cured by verdict. After verdict, the court will presume, that facts, without which it could not be found, were found, though not alleged. 1 *Wms. Saund.* 228. *a. Avery* v. *Hoole,* *Cowp.* 825.

Daggett, J. 1. It is contended, by the counsel for the defendants, that the declaration is insufficient. It states, generally, that the defendants, being an incorporated company, for a certain premium, by their policy, made insurance on the buildings, &c. of the plaintiff, *viz.* a building occupied by the plaintiff *as a manufactory of hat bodies, and on the privilege for all the process of said business.* There were many conditions annexed to the policy, which the declaration recites, with an unnecessary particularity, and then alleges a loss by fire, and that the plaintiff made proof of loss according to the requirements of the policy. One of those conditions, as they are called, is, that the insurers " will not be liable for any loss or damage, which may happen or take place, by means of any invasion, insurrection, riot or civil commotion, or of any military or usurped power." Another is, that if the building shall be used, during the year for which it is insured, for any occupation deemed in the policy hazardous, or extra-hazardous, such as soap-boiler's or tallow-chandler's business, &c. unless otherwise in the policy specially provided for, then so long as it may be thus occupied, the policy shall cease and have no effect. Now, it is said, that the declaration is insufficient, because these exceptions are not negatived. I feel no difficulty on this point. All these conditions, if such they may be called, are inserted in the policy by way of proviso, and not at all as conditions precedent. They are introduced for the benefit of the defendants ; and they must be taken advantage of, if at all, by pleading. This general rule of law cannot be controverted. *Com. Dig. tit.* Pleader. C. 81. *Hotham* v. *The East India Company,* 1 *Term Rep.* 638. 645, 6. 1 *Chitt. Plead* 228, 9.

There is another condition, also, which, upon the same principle, ought to have been noticed in the declaration, and the exception negatived. It is expressly provided, that if there appear

any fraud or false swearing, the insured shall forfeit all claim under the policy. It is believed, that an averment, that the plaintiff had practised no fraud nor swore falsely, would sound rather oddly in the ears of a good special pleader.

2. The other exception to the declaration is, that there is no averment, that the justice of the peace, *Benjamin Isaacs*, Esq., before whom the plaintiff made oath to the amount of the loss of property, was not concerned in the loss, nor related to the party; and therefore, for aught that appears, he was incompetent to take this affidavit. In reply to this objection, it may be observed, as was said to a precisely similar objection in *Booth* v. *Booth*, 7 *Conn. Rep.* 366. "Who ever supposed before, that such an allegation was necessary? It is never necessary, in pleading, to negative the exception, which may exist against a judge or justice." The declaration, then, is good, even upon demurrer; and therefore, it becomes unnecessary to consider another ground taken by the plaintiff, to wit, that if it were defective, it is cured by verdict.

3. There is an exception on the motion for a new trial, that the declaration on oath of the loss of property, did not comport with the allegation in the declaration, nor with the 10th condition annexed to the policy; and therefore, was inadmissible. By this 10th condition, in case of loss, the insured is bound to declare on oath, "whether any, and what other insurance has been made on the same property." The certificate of the declaration of the loss, made by the plaintiff, so far as regards this point, is in these words: "That said property, or any part thereof, was not, nor has been insured, since the policy of insurance was taken out from the *Protection Insurance Company.*" The allegation in the declaration is, that this declaration was: "That no other insurance had been made on the property destroyed as aforesaid." The objection is, that by the declaration, a prior insurance might have been made. Now, I read so as to exclude that idea, without doing any violence to the language. It is as plain as though it had been expressly said, the property was not insured, when this policy was made, nor has it been since, except by this policy. The objection is indeed hypercritical.

4. The charge, it is said, was incorrect, because by the terms of the policy, taken in connexion with the conditions, *no carpenter's shop* could be kept in the building insured, *for any purpose.* The insurance was on the building for the manufacture of

hat bodies and on the privilege for *all the process* of said business. These words are very comprehensive. They must include a licence or authority to do whatever was necessary to the manufacture of hat bodies. All necessary machinery might, of course, be made there. It might, also, be there repaired. It would be a very narrow construction, that when a cog in a wheel was needed, or when any part of the machinery required repairing, it could not be done within this building, but the plaintiff must be delayed by going elsewhere. " Carpenters in their own shops, or in buildings erecting or repairing," are not protected, but excluded. This work seems to me fairly within the privilege "*for all the process of manufacturing hat bodies,*" as expressed in the policy.

It is further urged, that it having been admitted, that this building was occupied, during the existence of the risk, for a carpenter's shop, within the prohibition in the policy, the policy was vacated, and could not be revived, but by some new act of the parties. This objection is refuted, by an express provision in the contract of insurance ; and assuredly, the parties must be left to contract for themselves. It is the duty of the court to expound and enforce, not to make, contracts. If the building shall be appropriated to any prohibited use, *thenceforth and so long as* the same shall be so appropriated, the policy shall *cease* to bind the insurers. It is difficult to find language more suited to repel this objection.

Lastly, it is contended, by the defendants, that if the jury found the use of the building *as a carpenter's shop,* had ceased, yet if the boards and other lumber remained there, then the risk of fire was encreased, and the court should have instructed the jury, that the plaintiff could not recover. In this part of the case, it is material to observe, that no lumber, nor any other article supposed to have been in the building, when the carpenter's work had been carried on, was deemed either hazardous or extra-hazardous, or at all prohibited. There can, therefore, be no objection, on the ground of any such articles being in any part of the building.

The declaration, then, is sufficient ; and the motion for a new trial must be denied.

HOSMER, Ch. J. was of the same opinion.

PETERS, J. having been absent, during the argument of the

case; WILLIAMS, J. being interested as a stockholder in the *Fairfield*, *Protection Insurance Company;* and BISSELL, J., having been of counsel in the cause,—gave no opinion.

Motion in arrest to be overruled.

New trial not to be granted.