PAUL G. CHRISTY, RESPONDENT, v. GREAT NORTHERN LIFE INSURANCE COMPANY, APPELLANT.—181 S. W. (2d) 663.

Kansas City Court of Appeals. June 5, 1944.

526

*P. H. Jackson* and *Walter A. Raymond* for appellant.

*R. C. Southall* for respondent.

528

BLAND, P. J.—This is an action, arising before a justice, upon a total disability provision of an accident insurance policy. There was a verdict and judgment in the circuit court in the sum of $400, together with interest thereon in the sum of $36, and attorneys' fees in the sum of $250, based upon a vexatious refusal to pay, aggregating a total amount of $686. Defendant has appealed.

The facts show that on January 22, 1940, plaintiff, while walking on an icy sidewalk in Kansas City, slipped and fell, striking his back and left knee. Defendant paid plaintiff installments of $100 per month from the date of his injury to August 21, 1940, when defendant refused to make any further payment. Plaintiff filed three separate suits covering indemnity from August 22, 1940 to February 22, 1941. These cases were prosecuted by plaintiff to judgments in the circuit court. Defendant appealed to this court, where the judgments were affirmed. [See Christy v. Great Northern Life Ins. Co., 162 S. W. (2d) 301.] Thereafter, this suit was filed to recover indemnity from February 22, 1941 to June 22, 1941.

The facts further show that, when plaintiff fell, he was taken to a hospital where X-rays were taken, which revealed no bone fractures. His attending physician, Dr. Brams, testified that there was a diagnosis of "trauma to the knee, possibly cartileginous injury"; that a cast was applied to the left leg from the mid-thigh down, including the foot; that the cast was removed in about eight weeks and several weeks thereafter, on examination of plaintiff, there was found complete anesthesia of his left side, which included the face, arm, and the abdomen and the leg. Dr. Casebolt, who was called to examine plaintiff for the purpose of testifying, stated that he discovered the anesthesia on October 14, 1940; that he saw plaintiff on October 14, 1940, and again about a week later. He did not see plaintiff again.

Dr. Casebolt further testified that plaintiff's condition of anesthesia was due to a nerve injury; that plaintiff at the time that he saw him was also suffering from muscle spasms due to an injury to the sacro-iliac region.

Dr. Brams testified that the X-rays also showed that plaintiff was suffering from a condition of chronic arthritis, indicating that he has suffered from arthritis for sometime before his fall. The doctor testified that he had attended plaintiff as his physician from January 23, 1940, to and including February 21, 1941, and had seen him at least once a week during that time; that plaintiff's condition had not changed and the condition of aesthesia still exists; that it was possible, but improbable, that this condition was feigned; that, in his opinion, plaintiff had been continuously disabled from the date of the accident to the date of the trial; that he diagnosed plaintiff's condition at the time of the trial as traumatic neurosis; that this is a condition where the patient has in his own mind a very real disease or pain for which there is no pathology or organic finding; that plaintiff had very foul teeth, which could be a contributing, or the sole, cause of the arthritis and the pain in his back, but could not be the cause of the neurosis; nor could the arthritis be the cause of plaintiff's anesthesia; that the arthritis may have been aggravated or activated by the trauma; that, in his opinion, if plaintiff was a hale and hearty man prior to his fall and was not disabled by arthritis, "the fall could account for his trouble (but) the aggravation of his old trouble (arthritis) plus the new symptoms they presented"; that, "in my opinion, the fall started this whole chain of disease." "Q. (By Mr. SOUTHALL) Assuming that the pain or disease, whichever it might be termed, was caused from the accident from January 22, 1940, until February 21, 1941, is it your opinion that it is still caused from the fall? A. Yes, sir."

There was other testimony that plaintiff was a strong able-bodied man prior to his fall and experiencing no sensation indicating that he was afflicted with arthritis. Since the fall he has become totally disabled, walks with crutches and suffers intense pain.

Plaintiff introduced the petitions and judgments in the three cases reviewed in this court in Christy v. Great Northern Life Ins. Co., 162 S. W. (2d) 301. The petitions in those cases contained the same allegations as the petition in the case at bar, alleging that plaintiff, by reason of the fall, sustained accidental injuries which have continuously disabled him. None of those petitions or judgments in the four cases states, specifically, the injuries received. Plaintiff tried the present case on the theory that the judgments in the former cases are *res adjudicata* of the issues of this case, save and except as to the issue whether the injuries he received continued over the period of time sued for herein. Defendant introduced no testimony.

Defendant insists that its instruction in the nature of a demurrer to the evidence should have been given, and that plaintiff's Instruction No. 1 is erroneous.

Plaintiff's Instruction No. 1 told the jury, in effect, that plaintiff received accidental injuries by reason of his fall, within the meaning of the terms of the policy, which wholly disabled him from doing any and every kind of duty pertaining to any occupation or business during the time up to and including February 21, 1941, and "you are therefore instructed that if you find and believe from the evidence that the disability which existed prior to February 22, 1941, continued to exist and continued to disable the plaintiff from performing any and every kind of duty pertaining to any occupation or business during the period of time in this suit, extending from February 22, 1941, to June 22, 1941, and that defendant has not paid the indemnity for that period, if you find plaintiff was entitled to such indemnity, then your verdict in this case must be in favor of the plaintiff for $400 and you may allow interest at six per cent per annum on said sum from the date said monthly indemnity was due, if so, until this time."

Defendant insists that plaintiff's theory at the trial was that he was suffering from anesthesis due to neurosis; that "there was no evidence as to when this neurosis developed or whether it was in existence or was the cause of the disability on which the previous judgments on the policy had been rendered. The pleadings and judgments in the previous suits are silent on this question, and there was no other evidence offered and issues presented at the trials in the earlier cases. If this neurosis developed since the last trial, defendant would be entitled to have the jury determine whether it arose directly out of the earlier disability, and whether it was in fact totally disabling"; that the evidence shows that arthritis could have been one of the contributing causes of his disability. Plaintiff calls our attention to the testimony of Dr. Casebolt to the effect that plaintiff has never suffered from neurosis but from a nerve injury and, plaintiff says, he is not confined to the theory of neurosis. Plaintiff is correct in this contention.

But regardless of this we think defendant is in error in saying that there is no evidence as to when the neurosis, testified to by Dr. Brams, developed. This doctor stated that several weeks later than February, 1940, he found the anesthesia and while "several weeks" does not indicate a definite date, there is other evidence more definite in regard to this matter, in that Dr. Casebolt testified that, on October 14, 1940, which was prior to the time of the filing of some of the other suits, plaintiff was suffering from the anesthesis. It is true that the two doctors disagreed as to the cause of the anesthesia. Dr. Brams being of the opinion that it was due to neurosis and Dr. Casebolt that it was due to an injury to a sensory nerve, yet they both agree that it was

present and was a disabling ailment. There can hardly be any question but that the same conditions or afflictions that he was suffering from at the other trials still existed at the time of the trial in the present case, and that the total disability from which plaintiff was suffering, and upon which he recovered in the other cases still exists. Dr. Brams testified that his condition had not changed from the beginning. While defendant contends that this evidence consists of mere conclusions and is not substantial evidence, although it was not objected to, we are unable to agree with this contention. [Neal et al. v. Caldwell et al., 34 S. W. (2d) 104; Mayne v. May Stern Furn. Co., 21 S. W. (2d) 211; Ridenhour v. Okla. Constr. Co., 45 S. W. (2d) 108; Montague v. Washington Fidelity Nat. Ins. Co., 72 S. W. (2d) 804; Boswell v. Consolidated School Distr., etc., 10 S. W. (2d) 665.] We have examined State ex rel. v. State Highway Comm., 74 S. W. (2d) 265, and Kimmie v. Term. R. R. Ass'n, 66 S. W. (2d) 561, cited by defendant, and find them not in point.

If arthritis constituted a defense in the former cases but was not made such, it could have been litigated therein. Consequently, it must be treated, at this time, as an issue that has been settled adversely to the defendant. [Crnic v. Croatian Frat. Union of Am., 89 S. W. (2d) 683, 690; Crnic v. Croatian Frat. Union of Am., 66 S. W. (2d) 161, 163.]

It has been suggested that defendant is in no position to urge that the matters in issue and litigated in the trial of the present case (except the continuance of the disability) were not litigated or settled in the trials in the former cases. (Of course, as we have already indicated, if they could have been litigated therein, the result would have been the same.) "Matters in issue," as applied to the doctrine of *res adjudicata,* mean ultimate facts or state of facts in dispute and not evidentiary facts. "The matter in issue has been defined in a case of leading authority as 'that matter upon which the plaintiff proceeds by his action, and which the defendant controverts by his pleadings.' " [U. S. F. & G. Co. v. McCarthy, 33 Fed. (2d) 7, 10.]

The issues determined in the former cases were the issuance of the policy, payment of the premium, occurrence of the accident, the injuries received by the plaintiff, and that he was totally disabled from such injuries, under the terms of the policy, for the period covered by such suits. [See case last cited, l. c. 11.]

Bearing in mind that "matters in issue" do not mean evidentiary facts but ultimate facts, which latter kind of facts were pleaded in the former cases, it has been suggested that it will be presumed that the injuries, which plaintiff proved he suffered from as a result of the fall and existing during the period for which he seeks to recover indemnity in this case, are the same injuries upon which he based his disability in the other cases, and the burden is upon defendant to show otherwise. [Consult Johnson v. Board of Supervisors of Ionia

Co., 202 Mich. 597; Agnew v. McElroy, 48 Am. Decisions, 772; Phillips v. Berick, 8 Am. Decisions, 299; I. N. Moore v. Chattanooga Elec. Co., 16 L. R. A. (N. S.) 978; Williamson v. Dent Iron Co., 30 Mo. App. 662.] However, we need not go so far as to accept this theory in view of the testimony that plaintiff continues to suffer the same ailments from the fall that he had when the other cases were filed and tried.

We have examined Stoner v. New York Life Ins. Co., 114 S. W. (2d) 167, cited by defendant, and find it not in point. The policy in that case provided for two kinds of indemnity, one for permanent total disability and the other for merely total disability. The question presented was whether the two suits (the one before the court and the former suit filed) involved the same disability. It was held that the law to be applied was in relation to a situation where the pleadings present two or more distinct propositions and a verdict and judgment may be referred to either or both. As to the law in such situations see, also, Hickerson v. City of Mexico, 58 Mo. 61, 65. The pleading in the present and former cases disclosed but one issue, that is, total disability. This and the former cases were determined upon this single issue.

However, it is contended that there is no question of *res adjudicata* involved in so far as total disability is concerned, because plaintiff's condition of neurosis is imaginary, which condition will be relieved whenever plantiff ceases to imagine he has such troubles; that consequently there is no presumption that such a condition will continue. In support of this contention defendant cites U. S. F. & G. Co. v. McCarthy, *supra*. In that case it is held that a second suit under a policy of this kind is a separate claim or demand, an independent cause of action, and the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered, and the inquiry must be as to the point or question actually litigated and determined in the original action, and not what might have been thus litigated and determined, and that unless the disability for which the policy holder recovered in the first action was, in its nature, *permanent* and total disability, then there is no presumption that the disability continues and the judgment in the former action is not *res adjudicata* of the question of total disability in the present action. This theory is somewhat out of harmony with the law in this State on the subject, that law being that where the two actions are based on the same legal right, on the same policy, and on the same disability resulting from the same bodily injury effected by the same accidental means, as in this suit, the subsequent suit is upon a continuing and recurring cause of action and the disability, having been once established, the only matter to be litigated in the subsequent suit is whether it has continued over the period of time for which indemnity is sought and that, under such

circumstances, the former judgment is not only conclusive upon the issues actually litigated. [See Crnic v. Croation Frat. Union of Am., *supra*, 66 S. W. (2d) 161, 163; Crnic v. Croation Frat. Union of Am., *supra*, 89 S. W. (2d) 692; Boillot v. Income Guar. Co., 102 S. W. (2d) 132, 138.]

The policy provides that there can be no recovery of indemnity thereunder for any period of disability "during which Insured is not personally attended and treated by a legally qualified physician at least once in every seven days."

Defendant insists that plaintiff's Instruction No. 1 is erroneous for the reason that it does not require the jury to find that plaintiff was so attended and treated.

In this connection, it is stated that this provision of the policy constitutes a condition precedent, and the burden was upon the plaintiff to show that he was attended and treated as provided therein; and, as plaintiff's Instruction No. 1 covered the whole case and directed a verdict, it was reversibly erroneous in not requiring the jury to find that he was so attended and treated.

In order to intelligently pass upon this point, it is necessary to give a somewhat detailed description of the policy.

The policy starts out with a provision relating to the consideration and the period for which the policy is to run. It then recites that the insurance is against the effects of bodily injuries sustained through accidental means, said bodily injuries "being hereinafter referred to as 'such injury' and . . . (the company) promises to pay the respective indemnities hereinafter specified all in the manner and to the extent and within the limits hereinafter set forth."

The policy is then divided into thirteen parts. Part I provides "Schedules of Indemnities Principal Sum —— Dollars ($1,000.00) Monthly Accident Indemnity —— Dollars ($100.00)."

Part II covers certain "Specified Losses," which are, in their nature, permanent.

Part III provides for "Accident Indemnity—Total or Partial Disability."

The claim in this suit is under subdivision (a) of Part III, which subdivision reads as follows: "If 'such injury' shall (not) result in any of the losses enumerated in Part II, but shall, independently and exclusively of all other causes, immediately, continuously and wholly disable and prevent the Insured from performing any and every kind of duty pertaining to any occupation or business, the Company will pay, for the continuous period of loss of time caused thereby, not exceeding sixty (60) consecutive months, accident indemnity at the rate per month specified in Part I."

Part IV provides for "Double Accident Indemnity."

Part V provides that certain casualties "shall be deemed bodily injuries within the meaning of this policy."

Part VI provides for the payment of surgeon's fees in case of non-disabling injuries.

Part VII provides for indemnity in specific amounts for various operations therein enumerated.

Part VIII provides for additional indemnity for hospital confinement.

Part IX provides for "Accumulations and Increases."

Part X provides for a "Grace Period" for the payment of premiums.

Part XI provides for the payment in a sum not exceeding $100.00 for emergency identification.

Part XII is headed: "GENERAL PROVISIONS" and reads: "(a) Full compliance on the part of the Insured and beneficiary with all of the terms and conditions of this policy shall be a condition precedent to recovery hereunder, and any failure in this respect shall forfeit to the Company all right to any indemnity. If the Insured is disabled by 'such injury' for more than thirty days, he or his representative shall furnish to the Company every thirty days, or as near thereto as may be reasonably possible, a report in writing from his attending physician or surgeon fully stating the condition of the Insured and the probable duration of his disability. No provision of the charter or by-laws of the Company not incorporated herein shall avoid this policy or be used in evidence in any legal proceeding hereunder. No assignment of this policy shall bind the Company unless consent thereto is formally endorsed hereon by an executive officer of the Company. The Insured may at any time release the company from any and all liability then existing or thereafter accruing to the beneficiary. The reinstatement of this policy as provided in Standard Provision 3 shall renew this policy only to the first day of the calendar month next succeeding that for which premium is paid.

"(b) *The insurance hereunder shall not cover*: any period of disability preceding date of first medical attendance; *any period of disability during which the Insured is not personally attended and treated by a legally qualified physician at least once in every seven days*; any injury sustained while, or in consequence of having been, in or on any vehicle of aerial navigation; any injury sustained by the Insured while engaged in military or naval service in time of war; any sickness or disease, any injury sustained or suffered outside the Continental United States or Canada." (Italics ours.)

Then follows a copy of the application for the insurance.

Part XIII headed "Standard Provisions" is made up of 17 paragraphs covering certain terms and conditions.

It thus appears that the provision relating to the attendance of a physician at least once every seven days appears in clause (b) of Part XII, and from a reading of the entire clause it is apparent that it provides for exceptions to the general provisions.

It is well settled that when an insurance policy contains a general liability clause, followed by a clause or clauses which except certain cases from the operation of the policy, it is not necessary for the petition to negative the exceptions, their existence being a matter of affirmative defense, as to which the burden of allegation and proof is upon the insurer. [Crenshaw v. Ins. Co., 71 Mo. App. 42, 52; Hester v. Fidelity & Casualty Co., 69 Mo. App. 186, 194; Fetter v. Fidelity & Casualty Co., 174 Mo. 256, 269; Meadows v. Life Ins. Co., 129 Mo. 76, 90, 91; Wendorff v. Mo. St. Life Ins. Co., 1 S. W. (2d) 99, 100, 101; Belt Auto. Indem. Assn. v. Ensley Tran. & Sup. Co. (Ala.); 99 So. 787, 790; Harrison v. Interstate Business Men's Accident Assn. of Des Moines, Iowa (Ark.), 202 S. W. 34; Lounsbury v. Protective Ins. Co., 8 Conn. 459; St. Paul Fire & Marine Ins. Co. v. Lester (Tex.), 187 S. W. 969; Trahant v. Perry (Mass.), 149 N. E. 660; 29 Am. Juris., p. 1083; 1 C. J., p. 490.]

In Wendorff v. Mo. State Life Ins. Co., *supra*, the policy contained a clause to the effect that the insurance should not cover injuries fatal or non-fatal sustained by the insured while in or on any vehicle or mechanical device for aerial navigation, etc. It was held, in that case, that the burden was upon the company to establish such a defense.

There is no question but that, under the general rule applicable to writings of this kind, the clause relied upon by defendant is one providing for an exception from the general liability provisions, and the burden was upon the defendant to prove the facts coming within it as a defense and not upon the plaintiff to negative such facts. This proof was not a part of plaintiff's case and it was not necessary for him to cover the subject matter of it in his instruction. The general rule relating to such matters is applicable, unless there is something in this particular policy to indicate that it was the intention of the parties that the rule should not apply. In this connection defendant points to the provision of the policy reciting: The Company "promises to pay the respective indemnities hereinafter specified all in the manner and to the extent and within the limits hereinafter set forth."

We are of the opinion that this provision does not affect the matter. It appears that the purpose of this clause was to make clear that defendant's liability was limited to the terms of the policy. It no doubt means that all conditions, both precedent and subsequent, must be complied with by the insured before defendant can be held liable. But it does not classify these conditions and does not purport to provide for, or cover, any exceptions to the general clauses.

Defendant also points out the first sentence of Part XII under the heading "General Provisions," as follows: "(a) Full compliance on the part of the Insured and beneficiary with all of the terms and conditions of this policy shall be a *conditions precedent* to recovery hereunder, and *any failure in this respect shall forfeit to the Company all right to any indemnity.*" (Italics ours.)

It appears from this sentence that it provides that the conditions precedent mentioned therein are such terms and conditions, the failure to comply with, which would forfeit the right to indemnity. It does not mention any *specific terms* or conditions. Under clause (b) the provision that the insurance shall *not cover* "any period of disability during which the Insured is not personally attended and treated by a legally qualified physician at least once in every seven days," appears to provide for merely an exclusion or exception from the coverage, and the failure to have a physician, under such circumstances, would not *forfeit* the indemnity. *All* of the terms of the policy could not be conditions precedent. Even some of the terms contained in subdivision (a) of Part XII, where appears the sentence relied upon by defendant, could not be said to be conditions precedent or, in fact, conditions of any kind.

In Part XIII headed "Standard Provisions" there are 17 separate provisions, some of which are conditions precedent in their nature, and some others are, in their nature, conditions subsequent, and some not conditions at all. It would lead to absurdities to say that all of the terms of the policy should be construed as conditions precedent.

We are of the opinion that there is nothing in this policy to take it out of the general rule that, when a policy contains a general liability clause or clauses, followed by a clause providing certain exceptions from the operation of the general clause or clauses, the burden is upon defendant to establish such an exception as it may rely on, and not upon the plaintiff.

At the instance of the defendant the court instructed the jury that the burden was upon plaintiff to prove that, during the time in question, he was attended and treated by a physician at least every seven days. In having the court give this instruction, the defendant received all, and more, than it was entitled to in regard to this issue.

We have examined Lustenberger v. Boston Casualty Co. (Mass.), 14 N. E. (2d) 148, and other cases cited by defendant and find them not in point. In that case the *insuring clause provided* that disability would be paid for such period, not exceeding five years, as the insured should be disabled and "during which he shall also be under the regular care of a legally qualified physician or surgeon other than himself."

In Feinberg v. New York Life Ins. Co., 127 S. W. (2d) 82, and Mandel v. John Hancock Mut. Life Ins. Co., 145 S. W. (2d) 449, the provision relating to the proof of disability was contained in the general clause.

It is insisted by the defendant that the court erred in giving plaintiff's Instruction No. 2, submitting the issue of vexatious refusal to pay. We think there is no merit in this contention. [Bonzon v. Met. Life Insurance Co., 143 S. W. (2d) 336, 340.]

The judgment is affirmed. *Cave, J.,* concurs; *Dew, J.,* not sitting.