Edward G. JACKSON, Respondent,

v.

PACIFIC MUTUAL LIFE INSURANCE
COMPANY, Appellant.

No. 22663.

Kansas City Court of Appeals.

Missouri.

Dec. 2, 1957.

Robert M. Duboc, Kansas City, Blackmar, Swanson, Midgley, Jones & Eager, Kansas City, of counsel, for appellant.

George Schwegler, Jr., Kansas City, Watson, Ess, Marshall & Enggas, Kansas City, of counsel, for respondent.

SPERRY, Commissioner.

This is a suit on a "health and accident" insurance policy issued to plaintiff by defendant. Trial to the court resulted in a judgment for plaintiff in the amount of $642. Defendant appeals.

Defendant contends that it is not liable but concedes that, if plaintiff is entitled to recover, the amount of the judgment is correct.

Plaintiff was an auditor, in the employment of the Government. For ten years he was insured under a health and accident policy issued by a company other than defendant. Sometime prior to March 1, 1955, defendant issued its group policy to the union of Government employees of which plaintiff was a member and, on March 1, 1955, plaintiff cancelled his other policy and was issued the certificate here sued on.

The pertinent provisions of the certificate are as follows:

"If the Member, while insured under the group policy, becomes confined in a lawfully operated hospital as a result of a disease for which the Member is not entitled to benefits under any workmen's compensation law or as a result of an accidental bodily injury which does not arise out of or in the course of employment, the Member will be paid an amount equal to the actual charges made by the hospital to the Member with respect to the first seventy days of such confinement during any one continuous period of disabil-

ity, but not exceeding the following amounts:

"(a) for board and room charges, an amount equal to the Daily Hospital Benefit for Member shown on the face of this Certificate for each day of such confinement; and

"(b) for other hospital charges, an amount equal to $240.00;

provided, however, that

"(1) no benefits will be payable if the confinement is due to a disease that was contracted or to an accidental bodily injury that occurred prior to the date the Member became insured under the group policy; * *" (and four other exclusions).

Defendant contends that the disease of arteriosclerotic aneurysm of the aorta for which plaintiff was treated, was contracted prior to March 1, 1955.

Plaintiff's evidence tended to prove that he, prior to March 1, 1955, had been working regularly," never missed a day; no reason to"; that he continued working steadily until July 1, at which time he had a vacation due; that he had been suffering from a pain in the back and visited his physician, Dr. Klein; that Dr. Klein examined plaintiff and was unable to find anything wrong; that the doctor advised him to have X-rays taken; that from the X-rays it was found that plaintiff was suffering from an aneurysm of the aorta.

Dr. Klein testified to the above facts and further stated that he was surprised when the aneurysm was discovered; that it was brought on by arteriosclerosis, a disease from which almost every one suffers after reaching middle age. When asked if he had an opinion as to when the aneurysm was contracted he said: "I really don't think that a person can answer that question because these can develop slowly but they can develop rapidly"; that sometimes the first time that is learned of the existence of such an aneurysm is when it ruptures. When asked if he knew (could tell) when an

aneurysm is contracted, as such, he answered: "I don't think you can tell, no sir." He stated that he did not know when the aneurysm here began.

Hospital records, introduced by defendant, tended to prove that plaintiff had suffered, intermittently, from aches and pains in the lower back for some three years prior to July, 1955; that he suffered such pains in January, 1955; that he suffered thereafter until he entered the hospital; and that he had been taking several empirin tablets daily to contain the pain.

For defendant, Dr. Helwig, pathologist at the hospital where the operation was performed, testified to the effect that he examined the tissue removed from plaintiff; that the malady was caused by a sacular dilation of the aorta caused by the blood pressure causing the weakened artery walls to bulge at this point; that from his examination of the tissue, it was his opinion that the aneurysm existed prior to March 1, 1955; that such a condition does not develop in months, that it is a slow process; that he believed the aneurysm would have been discoverable in January, 1955, from an X-ray; that the aneurysm existed and was the cause of plaintiff's back ache and pains, long prior to March 1, 1955.

Dr. Benoit operated on plaintiff, at St. Luke's Hospital, July 1, 1955. He testified to the effect that, in his opinion, the aneurysm existed prior to March 1, 1955; that it is impossible to state when an aneurysm develops; that within a year after a diagnosis of such an aneurysm 85 to 90% will rupture; that this aneurysm was virtually on the verge of rupturing; that an aneurysm can develop and rupture within possibly two or three months; that the odds are that this aneurysm was a little older than four months; that he could not be more specific; that plaintiff complained of low back pain of six months duration that, in witness' opinion, the back pains were caused by the aneurysm; that, four weeks after operation plaintiff had no back pain; made no such complaint at any time thereafter.

On cross-examination the witness stated that he would not be able to state when the disease was contracted; that it was possible the disease was contracted subsequent to March 1; that the phrase as to when a disease is contracted is ambiguous when applied to this ailment. He also stated that such an aneurysm, "in the broadest aspect of interpretation" has its inception when arteriosclerosis starts; that the latter condition begins at some time after 40; that arteriosclerotic heart disease and arteriosclerotic aneurysm come within the category of degenerative diseases and the problem as to when they are contracted is indefinite and ambiguous.

This case was tried to the court without a jury. We will review it upon both the law and the evidence as in suits of an equitable nature but the judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witness. Browder v. Milla, Mo.App., 296 S.W.2d 502, 505.

 Defendant relies on a clause which excepts certain cases from the operation of the policy. It is, therefore, a matter of affirmative defense and the burden of proof with respect to it rests with defendant. Christy v. Great Northern Life Insurance Company, 238 Mo.App. 525, 181 S.W.2d 663, 669. Such clauses should be strictly construed against the insurer. 45 C.J.S. Insurance § 893, p. 972; Reserve Life Insurance Company v. Lyle, Okl., 288 P.2d 717, 719, 53 A.L.R.2d 682.

A clause similar to this, in a hospital insurance policy, was construed to provide for a coverage of hospital confinement which results from a sickness which first becomes manifest or active as a cause for hospital confinement while the policy is in force. Reserve Life Insurance Company v. Lyle, supra, 288 P.2d 720; 45 C.J.S. Insurance § 893, p. 972, supra.

In 53 A.L.R.2d 689, it is said:

"It is generally recognized that provisions in a health or hospital insurance policy requiring that the illness or disease from which the assured suffers originate a specified time after the date of the policy to be within the policy coverage are strictly construed against the insurer, and the illness, disease, or disability will ordinarily be deemed to have its inception when it first becomes manifest or active or when there is a distinct symptom or condition from which one learned in medicine can with reasonable accuracy diagnose the disease."

Under this statement is cited the case of Hilts v. United States Casualty Company, 176 Mo.App. 635, 159 S.W. 771, and the annotator discusses a number of cases and situations in the following pages.

In Webster's New International Dictionary, Vol. II, at page 1496, the word "manifest" is defined as evident to the senses, especially to the sight; apparent; * * * not obscure or hidden. It means open, clear, visible, unmistakable, indubitable, indisputable.

 The evidence here fails to show that plaintiff's aneurysm indisputably and clearly existed prior to March 1, 1955. The medical evidence was all to the effect that it was not discoverable by ordinary surface examination, by palpation, even as late as July 1. True there was medical *opinion* evidence to the effect that it probably existed as early as January, 1955. But that testimony was largely based on X-rays taken in July, which was related back to the lower back pain suffered by plaintiff in January. Dr. Klein made no diagnosis of aneurysm on July 1, although he was told about the back pains and examined the patient. The testimony was to the effect that a correct diagnosis in this case could not have been made except by X-ray; and that lower back pains may result from many causes. Indeed, that is a fact commonly known to laymen.

The aneurysm in this case *may* have been present prior to March 1st; but it was not manifest to anyone until it was discovered

in July by X-ray. Not until then was it clearly shown to exist.

We hold that defendant has failed to prove that the aneurysm was manifest prior to the issuance of the certificate. We cannot, therefore, say that the judgment appealed from is clearly erroneous.

The judgment should be affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed.

All concur.