LAESSIG v. TRAVELERS' PROTECTIVE ASSOCI-
ATION OF AMERICA, Appellant.

Division One, June 18, 1902.

1. **Insurance: ACCIDENT POLICY: NECESSARY PROOF.** In a suit on an accident insurance policy, proof of the accident must be made. Proof of death alone is not sufficient to make out a prima facie case. Accidental death is an essential prerequisite to a right to recover on an accident insurance policy.

2. ———: ———: ———: SUICIDE. Where there is a provision in an accident policy that it is avoided if the assured came to his death by suicide, and there is a plea of suicide, no presumption arises that, because the death was not due to suicide, it was accidental. The accidental death must be proven by plaintiff, although defendant may fail in its defense of suicide. There is no presumption of law in such suits except the presumption that the assured did not commit suicide.

3. ———: ———: KIND OF PROOF. Proof that defendant's death was accidental need not necessarily be direct proof. It may be found from facts and circumstances.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. Zachritz,* Judge.

REVERSED AND REMANDED.

*Henry T. Kent* and *Seddon & Blair* for appellant.

The court erred in instructing the jury that if there was no direct evidence as to any other cause of death of Clement Laessig, the law presumed that the death was due to accident, for two reasons: first, there was no legal presumption of law in this case. If there was a presumption at all it was one of fact as distinguished from one of law. And it was for the jury to judge from all of the evidence what

was the cause of death; secondly, it was error to instruct the jury, as was substantially done, that unless the defendant showed by direct evidence that the death was not accidental, the jury should find for the plaintiff.

*Sim T. Price* and *F. H. Bacon* for respondent.

(1) In suits on contracts, like the one in question, plaintiff makes out a prima facie case by offering the certificate, proving the accident, and that proof of death were duly made. Meadows v. Ins. Co., 129 Mo. 91; Forse v. Supreme Lodge, 41 Mo. App. 117; Mulroy v. Knights of Honor, 28 Mo. App. 467. (2) The case was presented to the jury on the correct theory, because the cases all agree that where the body of a person is found on a railroad track, apparently killed by a train, and there is no direct evidence as to the cause of death, it will be presumed that the death was due to accident, and neither to suicide nor murder. Ins. Co. v. McConkey, 127 U. S. 661; Landon v. Ins. Co., 43 App. Div. 487, 60 N. Y. Supp. 188; s. c., 167 N. Y. 577; Washburn v. Nat. Acc. Soc., 10 N. Y. Supp. 366; Keels v. Life Assn., 29 Fed. 198; Ins. Co. v. Payne, 105 Fed. 172; Bacon on Benefit Societies, secs. 486-7; Duncan v. Preferred, etc., Assn., 13 N. Y. Supp. 620; Leman v. Life Ins. Co., 46 La. Ann. 1189; Sargent v. Home Ben. Assn., 35 Fed. 711; s. c., 142 U. S. 691; Ins. Co. v. Nicklas, 88 Md. 470, 41 Atl. Rep. 906; Ins. Co. v. Wiswell, 56 Kans. 765; 44 Pac. 996. (3) The burden was on the defendant, if it averred suicide, to prove it by a preponderance of the evidence. Leman v. Ins. Co., 46 La. Ann. 1189; Ins. Co. v. Payne (U. S. C. C. A.), 105 Fed. 172. The defendant, however, was not entitled to any exemption from the insurance laws of the State, and suicide was no defense. Logan v. Fidelity, etc., Co., 146 Mo. 114.

MARSHALL, J.—This is a suit to recover five thousand dollars upon an accident benefit certificate, issued by the defendant, a fraternal beneficial association, organized under the laws of this State.   The answer admits the character of its organization, then denies all the allegations of the petition, then admits issuing the benefit certificate, then pleads that by the terms of the certificate the defendant was exempted from liability if the member committed suicide, while sane or insane, and then alleges that the member committed suicide, and therefore the defendant is not liable. The plaintiff is the widow of G. H. Clement Laessig, the deceased member, and is the beneficiary named in the certificate.   There was a verdict for the plaintiff for $5,137.50, and defendant appealed.

Upon the trial the plaintiff proved the character of the defendant association, the membership of the deceased, the issuance of a certificate to the deceased on June 19, 1894, which entitled him "to all the benefits accruing from such membership under the provisions of the certificate and by-laws of this association, subject to the conditions printed on the back hereof, and the application for membership," and the provisions of the constitution and by-laws of the defendant which provided a graduated compensation to be paid for external and accidental injuries, varying according to the character and seriousness of the injury, and providing for the payment of five thousand dollars in case of accidental death.   Appellant's counsel have fairly stated the facts developed at the trial that are necessary to be considered in the determination of this appeal.   That statement of facts is as follows:

"The evidence of the plaintiff showed that Laessig had been last seen by his wife about seven o'clock on Sunday morning, July 2, 1899, when he left his home.   She testified that he was then in good health; that he was well and that she had never seen him in better spirits; that he had

on a gold watch and charm and a diamond pin in his shirt bosom.

"C. P. Girder, an express messenger, testified for the plaintiff, that he was a messenger on the Frisco railroad; that his train went out from St. Louis in the evening about ten minutes after the through fast train; that when near Arloe station his train stopped. He found that it had been flagged. The engineer of the first train came up and said he thought he had run over a man. This was between nine and ten o'clock at night. They then went back a short distance and found the body of Clement Laessig, lying along the north side of the track, upon the stomach, feet to the west. They were the first upon the spot. When asked to describe all he saw there, the witness testified that about five or six feet east of the body between the rails the head lay. Probably five or ten feet further to the east was a squash of blood clear across the tracks from north to south. On the outer edge of the ties, right close to the blood, was a pistol, one cartridge of which to the right of the chamber, had been exploded. 'The blood was right close to where the revolver lay and apparently where the train struck him.' His suspender was pulled down over the right shoulder. He had on but one shoe; his coat, his hat and left shoe the witness picked up in the weeds opposite to where he found the revolver. Witness did not see any watch or diamond pin on his body. It was a warm night. There appeared to be a very large hole over the left eye. It was dark, very dark, there at that time of night. The conductor had a lantern and the engineer his torch. He broke the revolver and took the exploded cartridge out and looked through the revolver. It didn't have the appearance of having been fired recently.

"The plaintiff introduced a doctor who made the post-mortem examination, who testified that the head was fractured and body had bruises on one side.

"This was substantially all the evidence of the plaintiff as to the cause of Laessig's death.

"The defendant's evidence was substantially as follows:

"It showed that Laessig had been a clerk for Goebel & Wedderan, merchants of St. Louis, for sixteen years; that on the day before his death Mr. Goebel had informed him that on the following Monday his books would be examined by an expert; that on this announcement Laessig appeared very nervous and worried. Witness did not see him again. The expert who went over the books testified that he was short in his accounts, about $8,000. The defendant showed that Laessig's body was found on Sunday, July 2, 1899, a few minutes after a train had passed west, lying alongside and north of the track of the Frisco railroad near Arloe station; that within the distance of a few feet further east was his head inside the two rails; about fifteen or twenty feet further east the rails showed evidence where the train had evidently run over and cut off his head, which was cut off from his body. There was a large pool of coagulated blood at that point, mainly inside the rail, some little being on the outside. There was no other blood around, except a small spot where the head was found. There was no evidence in the case on either side that blood was found anywhere between where the revolver was found and the head. As plaintiff's witness saw it the blood was across the track, the track opposite to the point where the revolver lay. As the defendant's witness saw it, there was a large pool of blood on the inside of the rail and a small pool on the outside of the rail.

"One of the defendant's witnesses, a doctor, who was on the spot in a few minutes after the train stopped, testified that he found a hole like a bullet-hole in the temple of the head, which seemed to be powder-burned. He probed the hole with a toothpick, and he, as a doctor, judged it to be a

bullet-hole. It had that appearance. The doctor testified that the blood having been coagulated, showed, in his opinion, that Laessig had been dead at least twenty-five or thirty minutes before the witness arrived on the spot, which was immediately after the train stopped. The doctor lived a short distance from the spot. About twenty-five or thirty minutes before the train passed, he had heard the sound of a shot, as from a revolver, proceeding from the spot where Laessig's body was found."

On behalf of the plaintiff the court gave the following instructions to the jury:

"1. The court instructs the jury that if they believe from the evidence that on July 2, 1899, G. H. Clement Laessig was killed by being accidentally run over by a loco-motive and train of cars, then in such case the jury will find for the plaintiff in the sum of five thousand dollars with interest thereon from September 14, 1899.

"2. The court instructs the jury that if the dead body of G. H. Clement Laessig was found run over by a locomotive and train of cars, and that there is no direct evidence as to any other cause of death, then the law presumes that the death was due to accident; and if the defendant claims that said death was due to suicide, then the burden of proof is on the defendant to show by a preponderance of the evidence that said death was so caused by suicide and not by accident. The court instructs the jury that in the absence of evidence satisfactory to the jury, that the death was from suicide, or the intentional act of himself, the law presumes that said death was not caused by suicide and unless the jury believe from the evidence that defendant has shown by a preponderance of the evidence that the death of said Laessig was caused by his own intentional act, then the jury must find for plaintiff.

"3. By mentioning the burden of proof and the preponderance of evidence, the court intends no reference to

the number of witnesses testifying, but to briefly express the rule of law, which is, that if the evidence before you that the death of said Laessig was accidental, appears in your judgment, more credible and of greater weight than the contrary evidence tending to show that said death was due to suicide, then in such case you should find for the plaintiff."

At the request of the defendant the court gave the following instructions to the jury, viz.:

"1.   The court instructs the jury that under the certificate of membership of G. H. Clement Laessig in the defendant association, that the defendant association was not liable for any injuries to the said G. H. Clement Laessig, fatal or otherwise, wantonly or intentionally inflicted upon himself; and if they believe from the evidence, taking into consideration all the facts, circumstances and surroundings in connection with the death of the said G. H. Clement Laessig, that on or about July 2, 1899, the said Laessig, being sane, voluntarily committed suicide, then the defendant association is not liable and they will so find.

"2.   The court instructs the jury that if they believe from the evidence that the assured Laessig was killed by some one before his body was run over by the train, then they will find for the defendant."

I.

The second instruction given for the plaintiff is assigned as error, in this, that it instructs the jury that if there is no *direct* evidence that the death was due to any other cause than by being run over by the cars, then in the absence of such evidence the law presumes that the death was accidental; and that it further instructs the jury that if the defendant claims that the deceased committed suicide, the burden is on it to so show; and that in the absence of evi-

dence satisfactory to the jury that the death was from suicide, the law presumes that the death was not from suicide, and unless the jury find that the defendant has shown by a preponderance of the evidence that the death was from suicide, then the jury must find for the plaintiff.

The plaintiff contends that the instruction correctly states the law. The two postulates laid down by the plaintiff for this contention are: first, "In suits on contracts like the one in question plaintiff makes out a prima facie case by offering the certificate, *proving the accident* [the italics are superadded] and that proofs of death were duly made;" and, second, "The cases all agree that where the body of a person is found on a railroad track, apparently killed by a train, and there is no direct evidence as to the cause of death, it will be presumed that the death was due to accident, and neither to suicide nor murder."

The first postulate is correct. But the difficulty is that the plaintiff in this case has not measured up to the requirements of the postulate, in this, that she has not *proved the accident;* that is, she has not proved that the death was due to an external accidental cause. She proved the death, but not the accidental death. And the proof of accidental death is the essential prerequisite and condition precedent, to a right to recover on an accident insurance policy. This is the distinguishing feature between accident policies and ordinary life policies. In the latter, to make out a prima facie case it is only necessary for the plaintiff to show the contract and the death, because the contract itself requires the payment of the sum named upon the happening of the death, which is the condition upon which the sum is to be paid. Whereas, in the former, the condition precedent to a recovery is not simply the natural death, but the death from accident. Hence, in suits upon accident policies, the burden of proof is upon the plaintiff (subject to the limitation that it is not to be presumed as a matter of law that the deceased

took his own life or was murdered) to show that the death was caused by external violence and by accidental means. This is exactly what the policy or contract itself provides. And this is the rule laid down by Mr. Justice HARLAN in the Supreme Court of the United States, in Travelers' Ins. Co. v. McConkey, 127 U. S. 661, and by the Supreme Court, appellate division, of New York, in Landon v. Acc. Ins. Co., 60 N. Y. Sup. 1. c. 191 (affirmed by Court of Appeals, 167 N. Y. 577). Whitlatch v. Casualty Co., 149 N. Y. 45, was an action upon an accident policy. The defendant pleaded suicide. The lower court instructed that the burden of proof was upon the defendant to show, by a fair preponderance of the evidence, that the deceased took his life with suicidal intent. The Supreme Court held this to be error, and laid down the rule that in suits on accident policies, where the petition charges death from accidental cause, and the answer pleads suicide, "the plaintiff is not released from the burden of making out, in the first instance, a prima facie case by a preponderance of the evidence that the assured died from external, violent and accidental means; and when the evidence shows that the injury was self-inflicted, and the only question for the jury is whether death resulted from accident or suicide, a charge is erroneous which permits the jury to infer that the defendant rested under the burden of proof from the opening of the trial, and which refuses to instruct the jury that if, upon the whole case, they find the evidence to be evenly balanced upon the question as to whether the insured intended to kill himself, they must find for the defendant."

In other words, the contract of accident insurance primarily casts the burden upon the plaintiff to show that the death was accidental. It must be so pleaded and proved. If the defendant wants to avoid liability for an accidental death it must prove that the death was due to a cause excepted from the operation of the policy; that is, that it was

.a suicide. In such cases there is no presumption of law that because the death was not due to suicide it was accidental. For it might not be due either to suicide or accident. It might be natural. In such case the defendant would fail in its contention that it was suicide, and the plaintiff would fail in his case because the death was not due to accident, and the contract only insured against accidental death. In fact, if there was no plea of suicide, the plaintiff would have to prove accidental death. There would be no presumption of accidental death. The jury must determine the fact as to what caused the death. There need not necessarily be direct proof or evidence of the cause. The cause may be found by the jury from facts and circumstances. But the cause of death is a fact for the jury. There is no presumption of law in such cases, further than the presumption against suicide; but even this presumption does not carry with it, in accident insurance cases, the further presumption that the death was accidental.

The rule is quite different as to ordinary life policies. For there the proof of the contract and of the death makes out a prima facie case, and if the defendant pleads suicide, the burden of proof is on it to show it; and because the presumption of law is against suicide, it follows that if the evidence is evenly balanced so that the jury can not decide whether the death was from suicide or accident, the presumption against suicide in such cases turns the scales, and leaves it due to accident; and because the plaintiff has already made out a prima facie case, the verdict must be for the plaintiff. The cases of Ins. Co. v. Wiswell, 56 Kans. 765; Ins. Co. v. Nicklas, 88 Md. 470; Keels v. Association, 29 Fed. 198; Ins. Co. v. Payne, 105 Fed. 172; Leman v. Ins. Co., 46 La. Ann. 1189; and Association v. Sargent, 142 U. S. 691, were all cases on ordinary life insurance policies, and, hence, fall within the reason above given as to such cases, and are not applicable to accident

policies.  This conclusion is in line with what was said by GANTT, P. J., speaking for Division Two of this court, in Meadows v. Ins. Co., 129 Mo. l. c. 91.  That was a suit upon an accident policy.  The defense was that the defendant was released from liability because the death was due to a cause excepted from the operation of the policy, in this, that he exposed himself to danger by unnecessarily going upon the roadbed of a railroad.  It was there said:  "We think that the plaintiff here was only required to prove that the death of Daniel Meadows was caused by violent and accidental injuries, visible upon his person, and that due notice of his death and proof of loss were made within the time required by the policy, and that the defendant had the burden of proving that his death was caused by one of the conditions by it specially pleaded.  But for the stipulation in the policy, the negligence of the deceased would have constituted no defense whatever to the action.  A fair construction of it permits a plea of contributory negligence, and the burden of sustaining that plea is upon the defendant who asserts it."

It will be observed that the learned judge likens such a case to a case of negligence and contributory negligence. But it is no more true in such cases as this that because the defendant does not sustain his excusatory plea that the presumption of law is that the death was due to an accidental and not to a natural cause, than it is true in an ordinary damage case that, because the defendant fails to sustain its plea of contributory negligence, the law presumes that the injury to the plaintiff was caused by the negligence of the defendant.  As mere proof of injury in a damage case will not entitle a plaintiff to recover, but negligence of the defendant must be shown, so in a suit upon an accident policy mere proof of injury or death will not entitle the plaintiff to recover, but the injury or death must be shown to be due to an accidental cause.  And this burden rests upon

the plaintiff irrespective of whether or not the defendant pleads or proves that the death was due to a cause excepted from the operation of the policy.

For these reasons the second instruction given for the plaintiff is erroneous, and the judgment of the circuit court is reversed and the cause remanded for a new trial. All concur.