# LOUISE M. GRIFFITH v. CONTINENTAL CASUAL-TY COMPANY, Appellant.

## In Banc, November 30, 1921.

1. **ACCIDENT INSURANCE: Suicide: Burden of Proof: Instructions.** Where the petition alleged that the insured's death was directly caused through "purely accidental means by accidentally falling out of a window" and the answer averred that his death "was due to suicide and self-destruction," the burden was on the plaintiff to prove that insured's death was accidental; and the giving of an instruction for plaintiff declaring that the burden is upon defendant to prove by a preponderance of the evidence that "the insured intentionally threw himself from the window with the intent and purpose of killing himself" and the refusing of one for defendant declaring that "before plaintiff can recover she must have proven by the preponderance or greater weight of the evidence that the death of the insured was due to accidental means and unless she has so proven the jury will return a verdict for defendant" was error against defendant, the issue whether insured's death was accidental or the result of an act intentionally done being exceedingly difficult to determine under the facts. The burden was on the plaintiff to show by the greater weight of the evidence that the insured came to his death by accidental means, and therefore the refusal of defendant's instruction was error; and. as there was no burden upon defendant, under the pleadings, since its answer was in effect a general denial, to show in what manner or by what means the insured came to his death, whether by suicide or otherwise, the giving of plaintiff's instruction was likewise error against defendant.

2. **INSTRUCTION: Error Against Defendant: Waiver by Further Minimizing Request.** Where the court by an instruction given for plaintiff and by refusing one asked by defendant had erroneously placed the burden of proof upon defendant, it will not be ruled that defendant waived its right to complain by asking and receiving another instruction declaring that defendant was not required to prove the issue beyond a reasonable doubt, for, under such circumstances, it did not invite the error, but yielding under protest to the theory of the trial court, did the best it could to minimize the erroneous instruction already given.

Appeal from St. Louis City Circuit Court.—*Hon. Granville Hogan,* Judge.

REVERSED AND REMANDED.

*Jones, Hocker, Sullivan & Angert* for appellant.

(1) Presumption against suicide vanishes when the evidence comes in. Brunswick v. Ins. Co., 278 Mo. 154, 213 S. W. 50. (2) In an action on an accident policy, defended on the ground of suicide, the burden of proof is on the plaintiff to prove accidental death. Brunswick v. Ins. Co., 278 Mo. 154, 213 S. W. 50; Laessig v. Ins. Co., 169 Mo. 280; Whitlatch v. Casualty Co., 149 N. Y. 45.

*Kinealy & Kinealy* for respondent.

(1) Where death by bodily injury suffered through external and violent means is fully established by direct evidence, the inference that it was either accidental or intentional inevitably arises. Brunswick v. Ins. Co., 278 Mo. 154, 213 S. W. 45. (2) Suicide is self-destruction through an intentional act done with the intent of causing death. Adkins v. Ins. Co., 70 Mo. 27. (3) Where the question is whether a death was accidental or suicidal, the burden of proof is upon the party claiming suicide. Reynolds v. Casualty Co., 274 Mo. 83; Brunswick v. Ins. Co., 278 Mo. 154, 213 S. W. 45; Andrus v. Bus. Men's Acc. Assn., 223 S. W. 70. (4) Where a defending insurance company claims a death is within one of the exceptions of the policy the burden of proof is upon it to so show. 1 C. J. 497, tit. Acc. Insurance; Fetter v. Fid. & Cas. Co., 174 Mo. 256; Meadows v. Life Ins. Co., 129 Mo. 76; Beile v. Protective Assn., 155 Mo. App. 629. (5) A party may not complain of an instruction which is in harmony with one given at his own request. Christian v. Ins. Co., 143 Mo. 460; Lange v. Railway, 218 Mo. 458; Gordon v. Park, 219 Mo. 600; Tranbarger v. Railroad, 250 Mo. 46.

RAGLAND, C.—This is a suit on a policy of insurance issued by defendant, whereby it, among other things, insured Harry C. Griffith against death suffered through personal bodily injury effected directly and independently of all other causes through external, violent and purely accidental means. It contained, however, this stipulation: "If the insured shall sustain loss of life by suicide or self-destruction, while either sane or insane, and such loss of life shall result within ninety days of the injury causing it, the company will pay one-tenth of said principal sum." The policy is dated July 8, 1910, and by reason of accumulations therein provided for, through annual renewals, the amount payable under it in 1919 in case of the insured's death through accidental means was $15,000. The plaintiff is the beneficiary named therein.

The petition after alleging the execution of the policy and its provisions as above indicated, except that it made no reference to the stipulation relating to suicide, stated "that thereafter on the 21st day of April, 1919, the said Harry C. Griffith received personal bodily injury effected directly and independently of all other causes through external, violent and purely accidental means, by accidentally falling out of a window of a room on the second floor of the St. Louis Baptist Hospital . . . to the ground beneath, whereby . . . he suffered concussion and hemorrhage of the brain; (and) that as a direct result of his said injuries the said Harry C. Griffith died on April 22, 1919."

The answer admitted the execution of the policy, in the terms and of the tenor alleged, and the death of Griffith, but denied the other allegations of the petition. It further averred that the death of Griffith was due to suicide and self-destruction; that the policy stipulated that in such event the defendant's liability should be $1,500 and no more; and that it brought into court and thereby tendered that sum.

Plaintiff filed a general denial by way of reply.

Plaintiff's evidence in chief tended to show the facts as follows: On April 16, 1919, the insured was taken to the City Hospital in the city of St. Louis, suffering from a gun-shot wound. Three days later his wife had him removed to the St. Louis Baptist Hospital. He was assigned Room 18 on the second floor of the building. This was a small room, eight feet wide by twelve feet long, with a window in the north end overlooking a brick pavement immediately below. The door was in the south end of the room, and the bed sat with the head against the west wall. Nurse Bridges was regularly in charge of this floor, but on Sunday night, April 20, about eleven o'clock, she went downstairs for night lunch, and during her absence her floor was taken charge of by Miss Sidney Bell, a nurse in charge of an upper floor. When Miss Bridges left, Griffith was in bed with the door of his room open, but whether the lower sash of the window was up or down is uncertain from the evidence, and Miss Bell was at a desk in the hall on the second floor. A bell on the upper floor, of which she was regularly in charge, called her upstairs shortly after Miss Bridges went to lunch. She answered this call, and when she came back to the second floor the door of Griffith's room was closed. She opened the door and found him dressed in a bathrobe sitting in a chair smoking in front of the window, the lower sash of which was raised. She stood in the doorway and asked him to go back to bed. He refused, saying that he wanted to smoke and could not do it in bed. She said that if he would go back to bed she would raise his head and he could then smoke, but he said no, that it choked him. She stepped inside the room and still insisted upon him going back to bed, and he continued to refuse, and asked her to go out and close the door, as it created a draft. When she stepped into the room Griffith got up out of his chair and turned facing her with his back to the window, and upon his still refusing to return to bed she, in her own words, started over to "set him in the bed and he sat out of the window." She ran to him and grabbed hold of his bathrobe as he went out,

and he reached up his hands towards her. She then let go of the bathrobe and got him by the ankle and held him there for a time with his body dangling down. While in that position she saw two men across the street and called to them to knock on the basement windows of the hospital to call the other nurses. One of the men tried to climb up on a lower window and reach him, but Miss Bell's strength giving away she let go her hold on Griffith's ankle and he fell to the pavement below, suffering fractures of his jaw bone and a hemorrhage of the brain. He was immediately picked up and carried back to his room in the hospital, where he died from the injuries received from the fall, in the early hours of Tuesday, April 22.

Defendant's evidence tended to show that Griffith was suffering from tuberculosis and on that account despondent; that he had previously threatened self-destruction because of his physical condition; that the gunshot wound that was the occasion for sending him to the hospital was intentionally self-inflicted; that owing to the width of the window sill and the limited height to which the lower sash was raised, he could not, by sitting down in the window, or by attempting to do so, have fallen through the opening without a voluntary effort on his part directed to that end; and that having failed in his previous effort at self-destruction, he intentionally "sat out of the window" for the purpose of ending his life.

In rebuttal, plaintiff introduced evidence tending to controvert that of defendant.

Among others, the court gave at plaintiff's instance the following instruction:

"1.   The court instructs the jury that if they believe from the evidence that on or about the 21st day of April, 1919, Harry C. Griffith fell out of a window in a room on the second floor of the St. Louis Baptist Hospital to the ground below and that he thereby sustained abrasions of his skin, fractures of the bones of his head and hemorrhage of the brain, which caused his death on April 22, 1919, then your verdict must be in favor of the

plaintiff for $15,000, with interest thereon at the rate of six per cent per annum from September 2, 1919, unless you believe from the evidence that said Harry C. Griffith intentionally threw himself out of the window with the intent and purpose of killing himself, and the *court further instructs the jury that the burden is upon the defendant to prove by a preponderance of the evidence that said Harry C. Griffith intentionally threw himself from the window with the intent and purpose of killing himself.*"

The defendant requested instructions 7 and 11 as follows:

"7. The jury are instructed that it is not necessary for the defendant to prove beyond a reasonable doubt that the death of the insured, Harry C. Griffith, was due to suicide; a preponderance of the evidence will suffice. Hence, if the jury find from the evidence that the death of the insured was due to a fall from a window; and if upon a preponderance of the evidence, under all the facts and circumstances in proof, the jury believe that such fall was intentional on the part of the insured, then their verdict should be for the plaintiff only in the sum of fifteen hundred dollars, with interest at six per cent per annum from the date the plaintiff demanded payment under the policy.

"11. The court instructs the jury that under the terms of the policy in suit the defendant is only obligated to pay the plaintiff the sum of fifteen hundred dollars in case of the death of the insured by suicide or self-destruction, *and that before the plaintiff can recover a larger sum she must have proven by a preponderance or greater weight of the testimony that the death of the insured, Harry C. Griffith, was due to accidental means, and unless she has so proven the jury will return a verdict for the defendant;* and in this connection, the court instructs the jury that the death of the insured, if found to be due to suicide or self-destruction, was not death by accidental means within the meaning of the contract of insurance or of this instruction."

The court refused 11 but gave 7.

The verdict and judgment were for plaintiff.   Defendant appeals.

Appellant complains that the trial court by giving plaintiff's instruction 1 and refusing its instruction 11 improperly cast upon it the burden of proving that the insured's death was not effected. through accidental means.

As said by respondent's.counsel in their brief, "there is no room for any conclusion as to Griffith's death except that it was either accidental, or suicidal." If it was accidental, it was not suicidal, or if suicidal, it was not accidental; but it was either the one, or the other.   Was the burden on the plaintiff to show by the greater weight of the evidence that the insured's death was caused by accidental means, or was it upon defendant to show that he committed suicide?   In order to determine what the issue was· and who had the affirmative, the pleadings must be looked to.   The petition alleges that Griffith's death was directly caused through "purely accidental means by accidentally falling out of a window." The answer averred that his death "was due to suicide and self-destruction." This averment was equivalent merely to a· denial that the insured's death was caused through *accidental* means by *accidentally* falling out of a window.   It did not assert that his death came within some exception of the policy for which defendant was not liable; nor did it tender an affirmative defense in any sense.    If the petition in properly declaring on the policy had predicated liability of defendant merely on the death of the insured, and the defendant had by its answer sought to limit its liability under the policy by setting up a particular manner of death, the answer would to that. extent have set up an affirmative defense.   But it was necessary for the petition to allege, as it did, that insured's death was caused by accidental means, and, as stated, the answer denied that it was so caused, with an incidental admission of. liability to the

*Accident or Suicide: Burden of Proof: Instruction.*

extent of $1500 on the ground that the insured had committed suicide. The issue would have been just the same had the answer been a general denial.

That the insured's death was effected through accidental means was the one essential fact upon which defendant's liability could be predicated; it was affirmed by plaintiff and denied by defendant; it is elementary, therefore, that the burden was upon her to establish this fact by the greater weight of the evidence. Plaintiff undertook this burden and by her evidence showed that the body of the insured passed out of the window and dropped to the pavement below, under circumstances so equivocal that it would have been extremely difficult for the triers of fact to have determined from them alone whether insured involuntarily, or intentionally, "sat out of the window;" in other words, whether his death was accidental, or whether it was the result of an act intentionally done by him for the purpose of ending his life. Notwithstanding, this proof aided by the presumption arising from the love of life was sufficient to make out for plaintiff a prima-facie case, and thereupon the burden of going forward with the evidence devolved upon defendant. Defendant's evidence, epitomized in the preceding statement, tended to show that the insured intentionally precipitated himself from the window. With the facts all before the jury the presumption against suicide had no further procedural purpose to serve. The burden of proving accidental death still rested upon plaintiff as it had from the inception of the trial. We have recently had occasion to point out the difference between the burden of proof in its strict sense and the burden of going forward with the evidence (Downs v. Horton, 287 Mo. 414, 230 S. W. 103, 108); it is unnecessary to again elaborate upon these long-established and well-recognized distinctions.

As the burden, under the pleadings, was upon plaintiff to show by the greater weight of the evidence that the insured came to his death through accidental means, the refusal of defendant's instruction 4 was error. [Brunswick v. Ins. Co., 278 Mo. 154, 213 S. W. 50; Laessig

v. Ins. Co., 169 Mo. 280; Whitlatch v. Casualty Co., 149 N. Y. 45.] And as there was no burden upon the defendant, under the pleadings, to show in what manner or by what means the insured came to his death, whether by suicide or otherwise, the giving of plaintiff's instruction numbered 1 was likewise error.

Respondent insists that as appellant asked and the court gave instruction 7, which conceded that the burden was upon defendant to prove that Griffith's death was due to suicide, appellant is in no position to now complain of the giving of plaintiff's instruction numbered 1. In response to this, appellant says that, after the court over its objection and exception had given plaintiff's instruction 1, putting upon it the burden of showing that the insured intentionally fell out of the window, and had refused its instruction 11, which would have told the jury that the burden of showing that Griffith's death was caused by accidental means was upon plaintiff, it then asked and the court gave instruction 7, to the effect that it was not necessary that defendant prove that the death of the insured was due to suicide beyond a reasonable doubt—a preponderance of the evidence sufficing. The record does not show in express terms the order in which the instructions were asked and ruled upon, but it does not stand to reason that appellant would have asked the court to give instruction 11 if it had first asked and the court had given instruction 7, or that it would have asked for both at the same time. The only rational conclusion to be drawn from the premises is that appellant asked 7 after 1 had been given and 11 refused, as it says. Under such circumstances it did not invite the error, but, yielding under protest to the theory of the trial court, did the best it could to minimize the effect of the erroneous instruction already given. [Bailey v. Kansas City, 189 Mo. 503, 513.]

*Waiver: Minimizing Error.*

Appellant also assigns error on rulings of the trial court in excluding evidence offered by it. But it is so wholly improbable that defendant, on another trial, will

have just cause of complaint in that respect, we deem it unnecessary to review them.

For the error pointed out in the giving and refusing of instructions, the judgment is reversed and the cause remanded. *Small, C.,* concurs; *Brown, C.,* dissents.

PER CURIAM:—The foregoing opinion of RAG-LAND, C., is adopted as the opinion of the court. *Walker, D. E. Blair, Higbee* and *Graves, JJ.,* concur; *James T. Blair, C. J.,* concurs in the result; *Elder* and *Woodson, JJ.,* dissent.