Frances GENNARI (Plaintiff), Appellant,

v.

**PRUDENTIAL INSURANCE COMPANY OF AMERICA, a Corporation (Defendant), Respondent.**

No. 29872.

St. Louis Court of Appeals.

Missouri.

May 19, 1959.

William G. Phillips, St. Louis, for appellant.

Fordyce, Mayne, Hartman, Renard & Stribling, William W. Sleater, Jr., St. Louis, for respondent.

DOERNER, Commissioner.

Plaintiff appeals from an adverse judgment rendered against her in the Circuit Court of the County of St. Louis in an action brought by her on the double indemnity provisions of two life insurance policies issued on the life of her husband, Joseph Gennari.

The first policy, for $5,000, is dated December 27, 1930, and the second, for

$1,000, was issued on August 19, 1930. Both life insurance policies contained a rider whereby in consideration of an extra premium the defendant promised to pay to the plaintiff the face amount of each policy if the death of the insured occurred " * * as a result, directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means," provided, however, that said benefit should not be payable if such death resulted, among other causes, " * * directly or indirectly from bodily or mental infirmity or disease in any form." The defendant paid the amounts due under the life insurance provisions of the policy but refused to pay the double indemnities payable for death by accidental means.

In both counts of her petition plaintiff alleged that her husband had died on July 21, 1954, as a result of bodily injuries effected solely through external, violent and accidental means, when after working for a long period of time in an ice chamber he emerged therefrom into extreme heat which caused his death. By its answer defendant admitted the death of the insured; that the policies were in force; that there were no defaults in the payment of premiums, and denied generally the plaintiff's allegation that the insured's death had resulted from accidental means. It then pleaded the provision that the double indemnity was payable only upon due proof that the death of the insured had resulted from accidental means, and that no accidental death benefit was payable if the death of the insured resulted from bodily or mental infirmity or disease, and alleged that the plaintiff had failed to furnish it with due proof that the death of the insured came within the accidental death benefit provision of the policies.

The evidence revealed that the insured, Joseph Gennari, was 57 years old at the time of his death. His usual occupation was that of pastry cook, but in addition he accepted special engagements to carve ornamental table decorations out of ice. On July 20, 1954, he was specially em-

ployed by the Norwood Hills Country Club to prepare certain ice carvings for a social event to be held at the Club, and carried on his work in the walk-in icebox located in the basement of the club house. The icebox was about seven feet high, four feet wide, and nine feet long, and was cooled by refrigerating pipes suspended along the ceiling and walls. Witnesses estimated the temperature at from 31 to 38°F, and described it as such that beer would not freeze and ice would not melt. The record does not disclose the total length of time the insured was in the icebox, but it was sufficiently long for him to have completed carving an ice bowl and a bird out of blocks of ice, and to partially complete a swan. The deceased's outer garments consisted only of pants, a blue work shirt and two or three striped, cotton jackets. He wore no gloves, and stood on a concrete floor while performing his work.

After at least an hour's continuous carving, the insured was seen to lay down the hammer and chisel he was using, and to step through the door of the icebox, which had been kept open, into a hallway. He turned to his right, rounded a corner into a second hallway, and had taken in all about twelve steps in a normal manner, and had covered a distance of about forty feet from the icebox, when he was seen to stagger. Witnesses caught him before he struck the floor and assisted him into a chair. When asked whether he was sick, the insured mumbled the single word "yes," and thereafter said nothing. He had mentioned no reason for leaving the icebox to the Club's employee who was assisting him, and apparently was headed towards an employees' locker room and lounge.

Dr. Harold Selle, a member of the Country Club, who was in the men's grill, was summoned and rendered assistance to the insured. The doctor described the deceased as being in a semiconscious condition, perspiring profusely, and seized with minor convulsions. Upon taking the insured's blood pressure he found it to be

230 over 140. The temperature was not taken at that time. The insured was conveyed to the St. Louis County Hospital in an ambulance. Upon admission at 7:25 p. m., it was found that his temperature was 101°, and his blood pressure 250/180. Subsequently his temperature rose to 105.4° at midnight, and ice, wet sheets, and a fan were used to reduce the temperature to 100.2° reached at 1:30 a. m. Death occurred at 3:00 a. m. on July 21, 1954.

Testimony offered by the plaintiff developed that on the day the insured was stricken the temperature at the Federal Building in St. Louis, distant about eight or ten miles from the Country Club, was 102°. According to one of the witnesses, a thermometer located in the hallway near the icebox read 103°. The natural heat in the hallway was augmented by heat from the boilers, located in another part of the basement.

The record shows that the insured had been rejected for insurance, and shortly thereafter, on April 30, 1953, although he had no symptoms, consulted Dr. Birkle Eck to have a cardiovascular investigation made. Dr. Eck's report, read in evidence, disclosed that the insured weighed 161 pounds, had a blood pressure of 160/110, and had tortuous, thickened radial and temporal arteries. A fluoroscopic examination revealed that the cardiac border showed slight prominence on the left, compatible with early left ventricular hypertrophy; and also revealed increased hilar markings. The electro-cardiogram was within normal limits. Treatment prescribed was a high protein, low fat diet designed to gradually reduce the insured's weight; a mild sedative; and rutin and ascorbic acid tablets. The insured was again seen by Dr. Eck on May 21, 1953, and a third time on September 17, 1953, when his weight was 161 pounds and his blood pressure 160/104. The doctor's final diagnosis was hypertensive cardiovascular disease; arteriosclerosis; peripheral.

As indicated by the pleadings, the sole issue in dispute between the parties was whether or not the death of the insured resulted from accidental means. In support of her contention that the emergence of the insured from the cold icebox to the very hot hallway affected the heat control center in the brain, and caused the insured's death, the plaintiff presented Dr. Sylvester H. Pranger and Dr. Harold Selle as her medical witnesses. It was Dr. Pranger's opinion that the insured suffered a great shock, equivalent to a heat stroke, due to the sudden and radical change in temperature, which affected the heat control center of the body, located in that part of the brain called the thalmus, causing an edema of the brain, and resulting in the insured's death. In this he was supported by Dr. Selle, who also attributed the insured's death to a cerebral vascular accident, probably precipitated by the extreme change in the heat environment. However, Dr. Selle admitted that he did not know the precise and direct cause of the insured's death. For its part defendant introduced the death certificate, which gave "Cerebral Vascular Accident, Malignant Hypertension" as the cause of death, as well as the records of St. Louis County Hospital, in which the final diagnosis was given as "Cerebral hemorrhage due to hypertension. Hypertensive cardiovascular disease." Defendant's medical witnesses were Dr. Curtis Lohr, Superintendent and Medical Director of St. Louis County Hospital, Dr. Orhan Sansoy, Chief Resident of Medical Service in the same hospital, and Dr. Charles W. Miller, an independent physician who limited his practice to internal medicine. In brief, it was their opinion that the insured's death was caused by a cerebral hemorrhage, due to hypertension and hypertensive cardiovascular disease, and that the heat played no part in his death.

Prior to the closing arguments the plaintiff offered, and the trial court refused to give, instruction No. B, which told the jury that the burden was on the defendant to prove that the proximate cause of the death of the insured was his pre-existing condi-

tion of hypertensive cardiovascular disease and arteriosclerosis. The court's refusal to give the requested instruction is assigned as plaintiff's first complaint of error, her contention being that the defendant had the burden of proof on its pleaded defense that the death of the insured resulted from bodily infirmity or disease. To support her argument she cites a long list of cases beginning with Fetter v. Fidelity & Casualty Co., 174 Mo. 256, 73 S.W. 592, 596, 61 L.R.A. 459, 97 Am.St.Rep. 560. In that case the plaintiff claimed that the insured's death resulted from a ruptured kidney sustained when a pole, which he was using in an attempt to close the upper sash of a window, slipped, throwing him upon his side against the edge of the table. An autopsy revealed that the kidney was ruptured, and the lower end cancerous. Defendant pleaded that the insured had died as the result of the diseased kidney. Plaintiff in that case offered, and the trial court gave, an instruction which told the jury that the burden of proving that the deceased's death was caused by disease was upon the defendant, and "unless they believe from the preponderance of the evidence that said death was caused by disease they will find for the plaintiffs." On appeal, defendant urged error in the giving of the instruction, but the Supreme Court said:

"It is complained that the third instruction for the plaintiffs was erroneous in placing the burden on the defendant to show that the insured died of cancer. When the plaintiffs introduced evidence tending to show that the insured died of hemorrhage resulting from the accidental fall, they made out a prima facie case. (Laessig v. Travelers' Protective Ass'n., 169 Mo. 272 [69 S.W. 469]). It was not necessary, then, for them to take up the defendant's side of the case and prove that the death did not result from any of the excepted causes named in the policies. The defendant in its answer, had averred that the man died of cancer; the burden was on the defendant to prove it."

The last case decided on the point by the Supreme Court is Waterous v. Columbian Nat. Life Ins. Co., 353 Mo. 1093, 186 S.W. 2d 456. There it was claimed that the insured had accidentally struck his head on a furnace pipe in his home, resulting in paralysis of his right side, arm and leg. One of the contentions of the insurer, on an appeal by the plaintiff-assignee of the insured, was that the burden of proving that the paralysis was not caused by disease was on the plaintiff. As to this argument the Supreme Court (186 S.W.2d loc. cit. 460) said:

"We do not agree with the respondent that appellant had the burden to show 'that the paralysis was not caused by disease.' Since the case of Fetter v. Fidelity & Casualty Co., 174 Mo. 256, 73 S.W. 592, 61 L.R.A. 459, 97 Am. St.Rep. 560, it has been the law in this State that the burden is on the defendant to prove that condition or death of the insured was caused by disease in those policies that had the same or similar clause that is in this policy. In that case, the policy had the phrase, 'independent of all other causes,' which is found in the policy in the case at bar. Regardless of the view of courts in other states, the law is well established in this State and we think it is sound."

■ Defendant argues that in its answer it did not affirmatively plead that the insured's death was the result of disease; that its answer was only a general denial of plaintiff's allegation that death was due to accidental means; that the burden of proof was upon the plaintiff to establish that the insured's death was caused by accidental means; and that under a general denial it was entitled to show that the insured's death resulted from disease, citing Layton v. Metropolitan Life Ins. Co., Mo. App., 89 S.W.2d 576; Krug v. Mutual Life Ins. Co. of New York, 235 Mo.App. 1224, 149 S.W.2d 393; and Hughes v. Provident Mutual Life Ins. Co. of Philadelphia, Mo.

App., 258 S.W.2d 290. It is true that in defendant's answer there was no direct allegation to the effect that the cause of the insured's death was disease. But it did affirmatively plead that part of the rider which provided that no accidental death benefit was payable if the death of the insured resulted from bodily infirmity or disease in any form, and it alleged that the plaintiff had failed to furnish it with due proof that the insured's death came within the accidental death benefit provision of the policy. Furthermore, the only controverted issue throughout the trial was, as counsel for defendant succinctly stated in his closing argument to the jury, "We maintain he (the insured) had a cerebral hemorrhage and they say he had a heat stroke." Section 509.500 RSMo 1949, V.A.M.S., provides that when issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleadings. We therefore treat the answer as having been amended to plead death from disease as an affirmative defense. Connor v. United Ins. Co., Mo.App., 313 S.W.2d 222.

It must be conceded, as the defendant argues, that a distinction appears to have been drawn between those cases in which the defendant affirmatively pleads that the death of the insured resulted from bodily infirmities or disease, and those in which the so-called exception has not been affirmatively pleaded. In the former it is said that the defendant has the burden of proving that the death of the insured resulted from bodily infirmities or disease. Fetter v. Fidelity & Casualty Co. of New York, supra; Waterous v. Columbian National Life Ins. Co., supra; Hughes v. Provident Mutual Life Ins. Co. of Philadelphia, Mo.App., 258 S.W.2d 290. But in the second line of cases it is said that the defense of bodily injury or disease is not an affirmative defense, and may be shown under a general denial. Krug v. Mutual Life Ins. Co. of New York, 235 Mo.App. 1224, 149 S.W.2d 393; Layton v. Metropolitan Life Ins. Co.,

Mo.App., 89 S.W.2d 576; Hughes v. Provident Mutual Life Ins. Co. of Philadelphia, supra. The basis for the latter view seems to be that under a general denial a defendant may prove any fact tending to show that an essential element of plaintiff's cause of action is untrue. Krug v. Mutual Life Ins. Co. of New York, supra; State v. Thompson, 337 Mo. 328, 85 S.W.2d 594; Stein v. Battenfield Oil & Grease Co., 327 Mo. 804, 39 S.W.2d 345.

The reasoning underlying the Fetter and the other line of cases cited in plaintiff's brief, Beile v. Travelers' Protective Ass'n of America, 155 Mo.App. 629, 135 S.W. 497; Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 1 S.W.2d 99, 57 A.L.R. 615; Christy v. Great Northern Life Ins. Co., 238 Mo.App. 525, 181 S.W.2d 663; Waterous v. Columbian National Life Ins. Co., supra; Whited v. Guarantee Trust Life Ins. Co., Mo.App., 237 S.W.2d 915; Hughes v. Provident Mutual Life Ins. Co. of Philadelphia, Mo.App., 258 S.W.2d 290; and Jackson v. Pacific Mutual Life Ins. Co., Mo.App., 308 S.W.2d 291, is that the provision in the policy providing for payment of the accidental death benefit if death occurs from accidental means is a general liability clause; that the subsequent language stating that no accidental death benefit is payable if death results from bodily or mental infirmity or disease is an exception to the general liability clause; and that if the insurer pleads an exception to the general liability clause it thereby sets up an affirmative defense, and assumes the burden of proving it. It may be conceded that such is the rule in the construction of insurance policies generally, and that in an accidental death policy there likewise may be exceptions to the general liability clause. For example, the policies in the instant case also contained a restrictive aircraft clause, the effect of which was to excuse the insurer from payment of the accidental death benefit if the insured was killed while riding in a plane on a non-scheduled, casual flight. Had the insured drowned when an airplane in which he was a passenger was forced to

land in the sea, a defense that the insured was on a non-scheduled, casual flight would have been an affirmative defense, with the burden of proof resting on the insurer. See Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 1 S.W.2d 99, 57 A.L.R. 615.

A true exception to the general liability clause in an accidental death policy is thus in the nature of a plea of confession and avoidance—the insurer concedes that the death of the insured occurred through accidental means, but contends that the particular accidental means is excluded from coverage by the terms of the policy. An example is furnished in Meadows v. Pacific Mutual Life Ins. Co. of California, 129 Mo. 76, 31 S.W. 578, 50 Am.St.Rep. 427, where the plaintiff contended that the insured came to his death through the accidental means of being struck by a train. The insurer's defense was that the insured had unnecessarily exposed himself to the danger, based upon an exception to that effect in the policy. It was there held that the burden was on the insurer to prove the truth of the exculpation claimed by it.

But it seems to us that death as the result of bodily or mental infirmity or disease cannot be an exception to death through accidental means. The two causes are diametrical opposites or alternates. It may be, as held in the Fetter case, supra, that the bodily infirmity may be a predisposing or remote cause. It is likewise true, as held in the Fetter case and the line of cases following that decision, that the insurer is liable even though death would not have resulted from the accidental injury in the absence of the predisposing bodily infirmity. But as was held in that decision, there can be but one active, efficient, and proximate cause of death. As was said of the cause of death in Griffith v. Continental Casualty Co., 290 Mo. 455, 235 S.W. 83, 84: "If it was accidental, it was not suicidal, or, if suicidal, it was not accidental; but it was either the one, or the other." Similarly, in the instant case if the cause of the insured's

death was from accidental means, it could not be from bodily infirmity or disease; or, if from bodily infirmity or disease, it could not be accidental. For this reason we share the opinion expressed in Krug v. Mutual Life Ins. Co. of New York, 235 Mo.App. 1224, 149 S.W.2d 393, 403, that the so-called defense that an insured died of disease is not an affirmative defense but merely a denial of an essential element of the plaintiff's case, death by accidental means; and that the clause in a policy of this kind relative to death from bodily or mental infirmities or disease is nothing more than a redundant clause.

This view is consistent with those decisions holding that the burden of proof to establish that the death of the insured resulted from accidental means rests upon the plaintiff, and so remains until the end of the case. Laessig v. Travelers' Protective Ass'n of America, 169 Mo. 272, 69 S.W. 469; Caldwell v. Travelers' Ins. Co., 305 Mo. 619, 267 S.W. 907, 39 A.L.R. 56; Phillips v. Travelers' Ins. Co. of Hartford, Conn., 288 Mo. 175, 231 S.W. 947; Boring v. Kansas City Life Ins. Co., Mo., 274 S.W. 2d 233. That burden of proof never shifts to the defendant. Griffith v. Continental Casualty Co., 299 Mo. 426, 253 S.W. 1043. If the plaintiff well carries his burden, he thereby disproves, at least inferentially, that the insured's death resulted from any bodily infirmity or disease. Layton v. Metropolitan Life Ins. Co., Mo.App., 89 S.W.2d 576, 579. And if the jury, after hearing all the evidence, is unable to find that the insured's death was accidental, then defendant should be entitled to a verdict. Boring v. Kansas City Life Ins. Co., supra; Griffith v. Continental Casualty Co., supra.

However, as we have heretofore pointed out, the last decision by the Supreme Court is Waterous v. Columbian National Life Ins. Co., 353 Mo. 1093, 186 S.W.2d 456, in which the rule established in the Fetter case was reaffirmed. It is, of course, our constitutional duty to follow

last controlling decisions of the Supreme Court. Article V, Sec. 2, Mo. Constitution, V.A.M.S.; Smith v. St. Louis Public Service Co., 364 Mo. 104, 259 S.W.2d 692; Von Der Haar v. City of St. Louis, Mo. App., 226 S.W.2d 376. Hence in the light of the Waterous, Fetter and other decisions heretofore cited we are constrained to hold that the trial court erred in refusing to give plaintiff's instruction No. B.

■ There is a second reason why the judgment must be reversed. At defendant's request the trial court gave its instruction No. 2, which told the jury that if it found that the insured died from a cerebral hemorrhage, and that prior to his death he had a hypertensive cardiovascular disease, arteriosclerosis, and malignant hypertension, and if it found that such diseased condition "brought about or caused his death at such time," its verdict should be for the defendant. In Smith v. Washington National Ins. Co., Mo.App., 91 S. W.2d 169, in a similar case, this court held that it was prejudicial error for the defendant to have given an instruction that if the insured's death "was caused" by the disease of diabetes mellitus or blood poisoning or septic infection then its verdict should be in favor of the defendant. As was there pointed out, a disease may be a predisposing or remote cause of an insured's death in the absence of which the insured might not have died, but if the active, efficient, proximate cause is an injury suffered through accidental means the plaintiff is still entitled to recover. Fetter v. Fidelity & Casualty Co., 174 Mo. 256, 73 S.W. 592, 61 L.R.A. 459, 97 Am. St.Rep. 560; Young v. New York Life Ins. Co., Mo.App., 221 S.W.2d 843, affirmed 360 Mo. 460, 228 S.W.2d 670. The instruction given in the instant case, in failing to require the jury to find that the disease was the direct and proximate cause of the insured's death, was therefore prejudicially erroneous.

Plaintiff also assigns error in the giving of defendant's instruction No. 2 for the reason that the term "malignant hyperten-

sion" was used relative to the insured's state of health, when there was no evidence in the record of insured to support the use of that phrase. However, plaintiff overlooks the use of that term in the hospital record, the death certificate, and the testimony of Dr. Sansoy. The assignment must therefore be ruled against the plaintiff.

■ Error is also claimed in that the trial court admitted in evidence, over plaintiff's objection, that part of the hospital record which stated "History was obtained from wife and son. They both stated patient was doing very well up until one hour prior to admission when he was found unconscious at work. He has had hypertension as high as 180 systolic for the last 12 years." Plaintiff complains that the statement was written hearsay and therefore not admissible, citing Baugh v. Life & Casualty Ins. Co. of Tenn., Mo., 307 S.W.2d 660. However, as was pointed out in that case, such a record recital, though hearsay, may be admissible as an admission against interest. Since the insured's wife, who joined in making the statement, was the plaintiff in this case the record was admissible as such an admission by her.

■ At the request of the defendant the court below gave defendant's instruction No. 4, which defined the term "accidental means." Plaintiff does not claim that the definition of the term was erroneous, but complains that the instruction should have gone further, and defined the words "external," "violent," and the phrases "cerebral hemorrhage" and "bodily injuries," as used in defendant's instruction No. 2. If plaintiff desired an instruction defining those terms it was her duty to have offered such an instruction. Henson v. Jasinsky, Mo., 251 S.W.2d 601; Nelson v. Tayon, Mo., 265 S.W.2d 409.

■ Plaintiff's final assignment of error is directed at defendant's instruction No. 3, which told the jury that a finding

by it that the death of the insured resulted directly and independently of all other causes from bodily injuries sustained solely through external, violent and accidental means, could not rest on speculation and conjecture, "* * * but must be found by the jury from the facts given in evidence * * *," and that the burden was on the plaintiff to prove by a preponderance of the evidence that the insured's death was the result of bodily injuries sustained through external, violent and accidental means; and that unless the jury found that plaintiff had done so, she could not recover and its verdict should be for the defendant. Plaintiff argues that this instruction advised the jury that it could not draw an inference that the extreme change in temperature caused the insured's death. It may be true, as defendant argues, that defendant's instruction No. 3 is a cautionary instruction, and that the giving or refusal of a proper cautionary instruction is largely within the discretion of the trial court, with which an appellate court will not interfere when the trial court has endorsed the instruction by overruling a motion for a new trial. West v. St. Louis Public Service Co., Mo., 236 S. W.2d 308; LeGrand v. U-Drive-It Co., Mo., 247 S.W.2d 706. But a reading of those and other cases in which cautionary instructions have been approved will disclose that the jury was told that if it could not arrive at a finding without resorting to speculation and conjecture outside of and beyond the scope of the evidence "and the reasonable inferences deductible therefrom," then its verdict must be for the defendant. The instruction in the instant case limited the consideration of the jury to "the facts given in evidence," and in denying the jury the right to draw an inference from the facts in evidence, denied the plaintiff the benefit of the probative effect of her circumstantial evidence. West v. St. Louis Public Service Co., supra; LeGrand v. U-Drive-It Co., supra; Harke v. Haase, 335 Mo. 1104, 75 S.W.2d 1001; Tabler v. Perry, 337 Mo. 154, 85 S.W.2d 471.

Prejudicial error having been committed, ordinarily it would be recommended that the judgment be reversed and the case remanded for a new trial, but because of the conflicts and confusion shown to exist in the decisions regarding the burden of proof when the defense of death by bodily or mental infirmity or disease is raised in suits on accidental death insurance policies, and because of the general importance of the question involved, the Commissioner recommends that the cause be transferred to the Supreme Court for a re-examination of the existing law.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, the cause is transferred to the Supreme Court for the purpose of re-examining the existing law.

WOLFE, P. J., and ANDERSON and E. M. RUDDY, JJ., concur.